**MENLO SERVICE CORPORATION, Daniel Sloan, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, William Brock \*, Secretary, Department of Labor, James B. Edward, Elmer B. Staats, Defendant-Appellees.**

No. 84-2048.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 1985.

Decided July 8, 1985.

---

\* William Brock has been substituted for Raymond Donovan. Fed.R.App.P. 43(c).

R. Brian Dixon, Littler, Mendelson, Fastiff, & Tichy, San Francisco, Cal., for plaintiffs-appellants.

Stephen Shefler, Asst. U.S. Atty., Dept. of Labor, San Francisco, Cal., Douglas Davidson, Linda Jan S. Pack, U.S. Dept. of Labor, Washington, D.C., for defendants-appellees.

Before SNEED, TANG and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Appellants challenge the district court's affirmance of administrative decisions applying the Service Contract Act, 41 U.S.C.

§ 351 *et seq.*, to appellants' agreements to furnish technical employees to a research facility operated on behalf of the United States. We affirm.

## BACKGROUND

Appellants Menlo Service Corp. and Daniel Sloan, Menlo's president, executed purchase agreements with Lawrence Livermore Laboratory,[1] the purpose of which was to secure for the Laboratory necessary designers, draftsmen, and technicians. The purchase orders provided that, following a request from the Laboratory, Menlo would locate and refer desired personnel; hiring, however, remained the Laboratory's prerogative.

Once a referral was accepted, appellants negotiated separate "Employment Agreements" with each individual, agreements in which Menlo was identified as employer. The purchase orders executed between Menlo and the Laboratory also characterized Menlo as employer, and provided that appellants would assume sole responsibility: for the setting of wage scales; payment of wages, fringe benefits, and employment taxes; processing of employee insurance; and payroll administration. Menlo was paid by the Laboratory for each hour worked by one of its referrals.

The district court found that Menlo had no control over the work of its referrals, each of whom served alongside regular employees of the Laboratory, often for periods in excess of a year, performed similar tasks and was subject to the same supervision. The court also found, and appellants do not deny, that Menlo failed to pay many of its referrals the wage rates and fringe benefits prescribed by the wage determinations attached to the purchase orders.

Responding to this failure, the Department of Labor charged appellants with violation of the Service Contract Act, 41 U.S.C. § 351 *et seq.* Both the ALJ and Secretary of Labor agreed, determining that certain dollar amounts were due Menlo's referrals.[2] The district court affirmed the Secretary's conclusion that the workers furnished by Menlo were service employees entitled to the protection of the Act, including the prescribed minimum prevailing wages and fringe benefits.[3]

## DISCUSSION

The Service Contract Act, 41 U.S.C. § 351 *et seq.*, requires government service contractors to satisfy certain minimum standards for wages and working conditions. Its purpose is to protect the employees of government contractors.[4] The Act extends to "[e]very contract ... entered into by the United States ... the principal purpose of which is to furnish services in the United States through the use of service employees...." *Id.* at § 351(a).

Appellants do not dispute that the purchase order agreements with the Laboratory are contracts, nor do they contest that the Laboratory entered into these contracts on behalf of the United States. *See* 29 C.F.R. 4.107(b). Rather, appellants contend that the district court erred in finding

---

1. Lawrence Livermore is operated by the University of California on behalf of the U.S. Department of Energy.

2. Amounts due from the Laboratory to Menlo had been previously retained to provide for such liability. In addition, the Secretary of Labor barred appellants from pursuing other federal service contracts for three years pursuant to 41 U.S.C. § 354(a). That period having run, appellants' debarment is not part of this appeal.

3. The court did hold the Act inapplicable to draftsmen and designers referred by Menlo prior to October 13, 1976, the effective date of the 1976 amendments to the Act. Prior to that date, the Act did not extend to "white collar" employees. *See* Act of Oct. 13, 1976, Pub.L. No. 94–489,

90 Stat. 2358 (1976); H.Rep. No. 1571, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Ad.News 5211. The government has not appealed this portion of the district court's decision.

4. "Before the Act, the federal government had been 'subsidizing' substandard levels of compensation by awarding contracts to those who were able to bid low by paying less." *Saavedra v. Donovan*, 700 F.2d 496, 497 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 236, 78 L.Ed.2d 227 (1983); *see also* S.Rep. No. 798, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Ad.News 3737.

the Act applicable given Menlo's relationship with the Laboratory.[5] We disagree.

## A. *"Service Contract" Construed*

■ The Service Contract Act "establishes standards for minimum compensation and safety and health protection of employees performing work for contractors and subcontractors on service contracts entered into with the Federal Government...." 29 C.F.R. § 4.102. Appellants have contractually undertaken not only to administer payroll, but also to set the rates of compensation for their employees. Accordingly, they plainly appear to fall within the ambit of the Act.

"Service contract" is not defined in the Act. Appellants contend that the term contemplates discrete, task-oriented undertakings distinguishable from those involved here. In support of this construction, appellants cite the enumeration of representative services in both the legislative history and regulations.[6] The regulations point out, however, that "the Act does not define, or limit, the types of 'services' which may be contracted for," 29 C.F.R. § 4.111(b): the list of services is illustrative, not exhaustive. *Id.* at § 4.130. Furthermore, both "drafting" and "electronic equipment maintenance and operation" are expressly listed, *id.* at § 4.130(14) & (15), and appellants do not contest the government's assertion that those services are the sort of work their referrals performed. Indeed, appellants concede that "under appropriate circumstances, the provision of drafting or engineering services would fall under the Service Contract Act."

Nevertheless, appellants seek to distinguish their situation by suggesting that the Act "clearly contemplates that a service contractor will have control over the working conditions under which a service contract is performed," control which the district court found lacking. The plain meaning of the statutory provision relied upon by appellants, however, is not that a contractor must be in control of working conditions before being subject to the Act, but rather that when the contractor does exercise such control, it must satisfy certain health and safety requirements.[7]

Appellants argue that a "service contractor" must exercise control not only over working conditions, but also over the work force. Appellants assert that Menlo has neither the requisite responsibility for nor interest in any work performed by its nominal "employees." Even if these assertions are true, however, such responsibility and interest are not conditions of statutory coverage. *See* 29 C.F.R. § 4.111(b). Furthermore, Menlo is paid for each hour worked by its referrals, and has a contractual obligation to replace those found by the Laboratory to be unfit. The purchase orders also expressly provide that Menlo's "personnel shall begin work on the first working day following ratification by the University that work is to begin and continue as long as needed to fulfill the requirements of the University." Therefore, Menlo has an obvious contractual interest in each hour worked by its referrals.

---

5. The purchase orders contained an addendum providing that "[t]his sub-contract, to the extent that it is of the character to which the Service Contract Act of 1965 applies, is subject to the following provisions and to all other applicable provisions of the Act and regulations of the Secretary of Labor thereunder." Obviously, however, this recital does not determine whether the agreements at issue are of such a character. As a result, the government's attempt to characterize Menlo's noncompliance with the Act as a breach of a voluntary contractual commitment is unpersuasive.

6. "Types of service contracts which the Bill covers are varied and include laundry and dry cleaning, custodial and janitorial, guard service, packing and crating, food service and miscellaneous housekeeping services." S.Rep. No. 798, note 4 *supra,* at 3739; *see also* 29 C.F.R. § 4.130(a) (illustrative list).

7. "[N]o part of the services covered by this Act will be performed in buildings or surroundings or under working conditions, provided by or under the control or supervision of the contractor or any subcontractor, which are unsanitary or hazardous or dangerous to the health or safety of service employees engaged to furnish the services." 41 U.S.C. § 351(a)(3).

Appellants correctly note that the "principal purpose" of a contract must be the provision of services in order for the agreement to be a "service contract." 41 U.S.C. § 351(a). There is no merit, however, to appellants' contention that the "only arguable service provided the Laboratory by Menlo was the occasional referral of an individual, and the preparation of payroll...." This argument proceeds from the false premise that the services performed by Menlo's referred workers are distinct from Menlo's contractual undertaking with the Laboratory. In fact, the services performed by these workers were the *raison d'etre* of the agreements. As noted, Menlo was contractually required not only to furnish and pay workers, but also to provide almost immediate replacements (*i.e.*, within 24 hours of the Laboratory's request) should any of its workers prove unfit. Furthermore, while appellants seek to characterize their role in procuring personnel and preparing payroll as secondary to the primary purpose of the contracts, Menlo did not receive a set fee for each worker referred or paycheck prepared; rather, it was paid for each hour of service rendered the Laboratory by Menlo's employees.[8]

Finally, our statutory construction must be guided not only by the general stricture that remedial labor statutes like the Service Contract Act are to be liberally construed, *see Midwest Maintenance & Const. Co. v. Vela*, 621 F.2d 1046, 1050 (10th Cir. 1980), but also by the legislative intent that "service contract" be construed broadly. In passing the Act, Congress clearly intended to close a gap in the otherwise comprehensive net of federal contract legislation.[9] Construed in light of that purpose, the Act is plainly applicable to Menlo's agreements with the Laboratory.

### B. Service Employees

Appellants argue that the workers referred to the Laboratory are not "service employees" within the meaning of the Act. *See* 41 U.S.C. § 357(b). Instead, appellants insist that the only employees who truly provided a service to the Laboratory were those Menlo office employees who arranged the referrals and prepared the payrolls. This argument, however, requires distinguishing services performed by Menlo from those performed by Menlo's employees at the Laboratory. As we have already said, this distinction cannot be sustained. The services of Menlo's Lab-stationed employees were not only an integral, but the principal purpose of the contracts.

### C. Exemption for Direct Services

■ The Service Contract Act expressly exempts "[a]ny employment contract providing for direct services to a Federal agency by an individual or individuals." 41 U.S.C. § 356(6). Appellants contend that their employees fall within this exemption because they provide services to the Laboratory, which is concededly an agent of the United States. The regulations, however, construe the exemption to apply to a contractor only when that contractor as an individual provides direct services to the government "and no service employee would ... be used" in the performance of the contract. 29 C.F.R. § 4.121. This construction comports with the well-settled rule that while terms of remedial labor legislation are to be liberally construed,

---

8. In explaining the "principal purpose" requirement, the regulations significantly discuss not the source of services, but the distinction between the furnishing of services and the provision of tangible goods. *See* 29 C.F.R. §§ 4.111(a), 4.116(c), 4.132, & 4.134.

9. "In determining questions of contract coverage, due regard must be given to the apparent legislative intent to include generally as contracts for 'services' those contracts which have as their principal purpose the procurement of something other than the construction activity described in the Davis-Bacon Act or the materials, supplies, articles, and equipment described in the Walsh-Healey Act. The [Congress] took note of the labor standards protections afforded by these two Acts to employees engaged in the performance of construction and supply contracts and observed: 'The service contract is now the only remaining category of Federal contracts to which no labor standards protections apply.'" 29 C.F.R. § 4.111(b) (citations omitted).

exemptions in such statutes should be read narrowly. *See Donovan v. Nekton, Inc.,* 703 F.2d 1148, 1151 (9th Cir.1983); *Brennan v. Keyser,* 507 F.2d 472, 477 (9th Cir. 1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975).

### D.  The Laboratory's Exempt Status

■ Lawrence Livermore Laboratory is a federally-owned research facility operated by the University of California on behalf of the U.S. Department of Energy. Neither party disputes· that the contract between the University and DOE is not covered by the Service Contract Act because its principal purpose is not to furnish services through the use of service employees.[10] Appellants argue that since the Laboratory's own employees are not covered by the Act, neither should be Menlo's referred and indistinguishable additions to an otherwise exempt work force.

The regulations, however, clearly contemplate the Act's application to contracts between exempt prime contractors and secondary providers of services.[11] While it may be true that Menlo's employees serve in capacities identical to those filled by direct employees of the Laboratory, the differential impact of the Act upon their respective employees turns upon the difference in the principal purpose of the respective contracts. While Menlo has principally contracted to provide services (including the services of its employees), the University has principally undertaken management and operation, tasks not subject to the Act.

Appellants' repeated insistence that the Laboratory unquestionably exercised more control over referred workers than did Menlo ignores the fact that Menlo was neither without authority over these workers nor without contractual responsibility

for their performance. The district court found Menlo and the Laboratory to be joint employers, doubtless because each acted as employers in certain respects. While the Laboratory was effectively responsible, for example, for working conditions and supervision, Menlo was responsible for payroll (including the setting as well as disbursing of wages). It is appropriate that the Act's minimum wage provisions apply to Menlo, because Menlo set the level of wages paid to the referred employees. Menlo therefore cannot rely on the Laboratory's exemption. *Cf. Bonnette v. California Health & Welfare Agency,* 704 F.2d 1465, 1469 (9th Cir.1983) ("[a]ll joint employers are individually responsible for compliance with the FLSA.").

AFFIRMED.

---

**10.** *See Menlo Services Corp. et al.,* SCA No. 876–883 [Sep. 1978–Jan. 1981 Transfer Binder] Lab. L.Rep. (CCH) ¶ 31,331 (July 23, 1979).

**11.** "Sometimes authority to enter into service contracts ... may be delegated ... to a prime contractor with the Government under the terms of a contract having a principal purpose other than the furnishing of services through the use of service employees (as, for example, a

contract to operate or manage a Federal installation or facility...). The contracts entered into by such a prime contractor with secondary contractors ... which have such services as their principal purpose, are deemed to be contracts entered into by the United States and contracts with the Federal Government within the meaning of the Act." 29 C.F.R. § 4.107(b).