# Applicability of the Service Contract Act to Volunteer Workers at the National Oceanic and Atmospheric Administration

Pursuant to 28 U.S.C. § 512, the Office of Legal Counsel has jurisdiction to resolve a legal dispute between the Departments of Commerce and Labor where the request for the opinion was made by the General Counsel of Commerce under authority delegated from the Secretary of Commerce.

The Service Contract Act prohibits contractors operating the National Oceanic and Atmospheric Administration library from using voluntary, uncompensated employees. Commerce may petition the Secretary of Labor for an exemption to permit the use of volunteer employees under the NOAA contract

July 31, 1989

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF COMMERCE

This letter responds to Robert H. Brumley's request of June 10, 1988 for the opinion of this Office as to the applicability of the Service Contract Act ("SCA" or "Act") to a contract to operate the National Oceanic and Atmospheric Administration ("NOAA") library in part by using voluntary, uncompensated help to perform tasks that fall within the type of services otherwise covered by the Act. For the reasons set forth below, we conclude that the Act applies to such contracts and that the contractor or subcontractor may not use volunteer employees to perform tasks associated with operating the library.

## I. Background

Congress enacted the Service Contract Act in 1965 "to provide labor standards for the protection of employees of contractors and subconrtactors [sic] furnishing services to or performing maintenance service for Federal agencies." S. Rep. No. 798, 89th Cong., 1st Sess. 1 (1965). The Act, as codified at 41 U.S.C. §§ 351-358, implements this goal by requiring contractors and subcontractors on contracts greater than $2,500 to pay workers at least the minimum wage. Section 351(a)(1) provides:

> (a) Every contract (and any bid specification therefor) entered into by the United States or the District of Columbia

264

in excess of $2,500, except as provided in section 356 of this title, whether negotiated or advertised, the principal purpose of which is to furnish services in the United States through the use of service employees, shall contain the following:

> (1) A provision specifying the minimum monetary wages to be paid the various classes of service employees in the performance of the contract or any subcontract thereunder, as determined by the Secretary, or his authorized representative, in accordance with prevailing rates for such employees in the locality .... In no case shall such wages be lower than the minimum specified in subsection [351](b) of this section.

41 U.S.C. § 351(a)(1).

Section 351(b) mandates that in no circumstances shall wage levels fall below the national statutory minimum wage:

> *No contractor* who enters into any contract with the Federal Government the principal purpose of which is to furnish services through the use of service employees and no subcontractor thereunder *shall pay any of his employees* engaged in performing work on such contracts *less than the minimum wage* specified under section 206(a)(1) of title 29.

*Id.* § 351(b)(1) (emphasis added). "Service employee" is defined in the Act as "*any person engaged in the performance of a contract entered into by the United States* and not exempted under section 356 of this title, whether negotiated or advertised, the principal purpose of which is to furnish services in the United States ... and ... include[s] all such persons *regardless of any contractual relationship that may be alleged to exist between a contractor or subcontractor and such persons." Id.* § 357(b) (emphasis added).[1] The Act prescribes penalties for noncompliance ranging from payment of compensation due underpaid employees to cancellation of the contract. 41 U.S.C. § 352(a).

The rationale for this unqualified approach to fair labor standards under the SCA was that service contracts represented "the only remaining category of Federal contracts to which no labor standards protections

---

[1] The legislative history of the SCA elaborates somewhat on this definition. According to the House Report, "'Service employee' means guards, watchmen, and any person engaged in a recognized trade or craft or other skilled mechanical craft, or in manual labor occupations, and any other employee for whom experience in such occupations is the paramount requirement." H.R Rep. No. 948, 89th Cong., 1st Sess. 5 (1965); *see also* S. Rep. No 798 at 2.

appl[ied]." H.R. Rep. No. 948, 89th Cong., 1st Sess. 1 (1965). Congress was concerned with preventing contractors from undercutting their competitors for government service contracts by reducing labor costs. As the House Report explained:

> The Federal Government has added responsibility in this area because of the legal requirement that contracts be awarded to the lowest responsible bidder. Since labor costs are the predominant factor in most service contracts, the odds on making a successful low bid for a contract are heavily stacked in favor of the contractor paying the lowest wage. Contractors who wish to maintain an enlightened wage policy may find it almost impossible to compete for Government service contracts with those who pay wages to their employees at or below the subsistence level. When a Government contract is awarded to a service contractor with low wage standards, the Government is in effect subsidizing subminimum wages.

*Id.* at 2-3.

The current disagreement between the Department of Commerce ("Commerce") and the Department of Labor ("Labor") arose when Commerce received a contractor's proposal to use voluntary, uncompensated employees to perform tasks covered by the Service Contract Act in operating the NOAA library. Commerce initially determined that the Act did not apply to such a contract.[2] Labor then advised Commerce by letter that the Act covered such contracts.[3] In reply, Commerce advised Labor that it had complied with Labor's interpretation of the SCA in awarding the NOAA contract. Commerce added, however, that its compliance required it to pay an additional $140,164 in the contract price, and that it intended to raise the issue with the Department of Justice.[4] On June 10, 1988, Commerce requested an opinion from this Office, stating that it believes Labor's position on this issue to be in error and that "it is likely that this question will arise on other procurements or in the course of recompetition of [the NOAA library contract]."[5]

---

[2] Memorandum for William Matuszeski, Director, Office of A-76 Activities, NOAA, from James K White, Assistant General Counsel for Finance and Litigation, Department of Commerce (Nov. 16, 1987).

[3] Letter for J. Curtis Mack, II, Acting Administrator, NOAA, from Paula V Smith, Administrator, Wage and Hour Division, Department of Labor (Dec. 7, 1987) Smith reiterated this position in a letter to Mack dated January 22, 1988.

[4] Letter for Paula V. Smith, Administrator, Wage and Hour Division, Department of Labor, from William E Evans, Under Secretary, NOAA (Apr 15, 1988)

[5] Letter for Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, from Robert H Brumley, General Counsel, Department of Commerce at 2 (June 10, 1988).

## II. Discussion

### A. *Jurisdiction*

The authority of the Attorney General to resolve this dispute between the Departments of Commerce and Labor is well-established. By law, "[t]he head of an executive department may require the opinion of the Attorney General on questions of law arising in the administration of his department." 28 U.S.C. § 512.[6] Here, there is no doubt that the question presented — whether Commerce, consistent with the SCA, can enter into a contract for the operation of the NOAA library that provides for the use of voluntary services — "aris[es] in the administration of [the Commerce] department." *See, e.g., Applicability of the Davis-Bacon Act to the Veterans Administration's Lease of Medical Facilities,* 12 Op. O.L.C. 89, 91 n.4 (1988) ("[I]nterpretation of statute that will affect contracts entered into by department is a legal question 'arising in the administration of the department' within meaning of … 28 U.S.C. 512.").[7]

The Solicitor of Labor challenges our jurisdiction to entertain Commerce's request for an opinion under 28 U.S.C. § 512 on the grounds that, inter alia, Commerce's request was not made by the Secretary of Commerce and addressed to the Attorney General. Letter for John O. McGinnis, Deputy Assistant Attorney General, Office of Legal Counsel, from Monica Gallagher, Associate Solicitor, Fair Labor Standards Division, Department of Labor at 2-4 (July 14, 1989).[8] This argument, however, completely ignores the fact that agency heads execute many of their important functions through delegation. A written request addressed from the General Counsel of Commerce to the Assistant

---

[6] In addition to the statutory authority set forth in 28 U S C. § 512, Executive Order No 12146, 3 C.F.R. 409 (1979), confers authority on the Attorney General to resolve disputes between executive agencies Executive Order No. 12146 provides in pertinent part

    1-4 Resolution of Interagency Legal Disputes

    1-401. Whenever two or more Executive agencies are unable to resolve a legal dispute between them, including the question of which has jurisdiction to administer a particular program or to regulate a particular activity, each agency is encouraged to submit the dispute to the Attorney General

    1-402 Whenever two or more Executive agencies whose heads serve at the pleasure of the President are unable to resolve such a legal dispute, the agencies shall submit the dispute to the Attorney General prior to proceeding in any court, except where there is a specific statutory vesting of responsibility for a resolution elsewhere

[7] By statute, the NOAA is "under the jurisdiction and subject to the control of the Secretary of Commerce " 15 U S C § 1511(a)

[8] The Solicitor of Labor also contends that we have no jurisdiction to respond to Commerce's request under Executive Order No. 12146 Executive Order No. 12146, however, augments the authority conferred on the Attorney General under 28 U.S.C. § 512 by, among other things, empowering the Attorney General to address questions raised by executive agencies not within one of the executive departments. *See* Memorandum for the Secretary of Housing and Urban Development, from Charles J Cooper, Assistant Attorney General, Office of Legal Counsel at 6 & n 1 (Aug 6, 1987) Because we conclude that we have jurisdiction to entertain Commerce's request under 28 U S C § 512, we need not address the scope of our authority under Executive Order No 12146

267

Attorney General for the Office of Legal Counsel may be entertained under section 512.[9]

### B. Applicability of the Service Contract Act to Volunteer Workers

We believe that the SCA applies to the contract at issue here because, although the Act does not expressly advert to volunteer workers, the plain meaning of the Act's unqualified proscription of subminimum wages does not admit of any such exception.

The statutory command in the SCA is simple and direct: "No contractor ... shall pay any of his employees ... less than the minimum wage." 41 U.S.C. § 351(b)(1). The Senate Report accompanying the bill put the matter just as starkly: "Persons covered by the bill must be paid no less than the prevailing rate in the locality as determined by the Secretary, including fringe benefits as an element of the wages. No less than the applicable minimum wage provided in the Fair Labor Standards Act, as amended, can be paid." S. Rep. No. 798 at 2.[10]

Commerce contends that "the Act is not intended to apply to prohibit volunteer services" apparently because the Act is silent with respect to volunteer workers, and both the Act and its implementing regulations implicitly refer to the payment of classes of "wage earning employees." Letter for Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, from Robert H. Brumley, General Counsel, Department of Commerce at 1 (June 10, 1988). In our view, although the Act does not mention volunteer workers per se, the plain meaning of the statutory scheme that Congress has adopted does not permit such an exception.

The SCA clearly directs that, with respect to "any contract with the Federal Government the principal purpose of which is to furnish services through the use of service employees," no contractor "shall pay any of his employees engaged in performing work on such contracts less than the minimum wage specified under section 206(a)(1) of title 29 [the Fair Labor Standards Act]." 41 U.S.C. § 351(b)(1).[11] In turn, the term "service

---

[9] The General Counsel of Commerce has been delegated broad authority to "appear[] on behalf of the Secretary" in legal proceedings and to "prepar[e] ... all papers relating to matters on which the opinion of the Attorney General is desired." Department of Commerce, DOO No. 10-6 §§ 4.01(3), (5) (July 3, 1963). The Assistant Attorney General for the Office of Legal Counsel has been charged with, among other things, "rendering informal opinions and legal advice to the various agencies of the Government." 28 C.F.R. § 0.25(a) (1989); see also 28 U.S.C. § 510.

[10] See also H R. Rep No 948 at 4 ("No contractor holding a service contract shall pay any of his employees performing the work on such contracts less than the minimum wage specified by section 6(A)1 of the Fair Labor Standards Act of 1938.").

[11] The command in the Fair Labor Standards Act, which covers employers providing contract services that are not covered by the SCA, is equally direct

Notwithstanding the provisions of section 213 of this title (except subsections (a)(1) and (f) thereof), every employer providing any contract services (other than linen supply services) under a contract with the United States or any subcontract thereunder shall pay to each of
Continued

employee" is defined in relevant part as meaning *"any person engaged in the performance of a contract entered into by the United States* and not exempted ... and ... include[s] all such persons *regardless of any contractual relationship that may be alleged to exist between a contractor or subcontractor and such persons." Id.* § 357(b) (emphasis added); *see also* 29 C.F.R. §§ 4.113, 4.150, 4.155.

Commerce does not explain, nor can we discern, how an exception for volunteer workers can be carved out of this broad definition of "service employee" without doing violence to the plain meaning of the Act. Under section 357(b), a "service employee" is defined as *any* person who performs work on a service contract entered into by the United States. Furthermore, section 357(b) expressly provides that the nature of an employee's contractual relationship with his or her employer has no bearing on the employee's covered status for purposes of the Act. Accordingly, we do not see any basis for ignoring the plain meaning of the Act and interpreting it as implicitly applying only to wage-earning employees, particularly in light of the maxim of statutory construction that "remedial labor statutes like the Service Contract Act are to be liberally construed." *Menlo Service Corp. v. United States,* 765 F.2d 805, 809 (9th Cir. 1985).

Indeed, as the Solicitor of Labor points out, construing the SCA in this manner could potentially invite a range of abuses: "permitting the use of 'volunteers' removes equality from the competitive bidding process and encourages contractors, if they wish to be low bidder, to replace their employees with 'volunteers' or to induce their employees to accept some form of 'volunteer' status.... These results are contrary to the intention of Congress in enacting the SCA to increase the protection of workers in the service industry and to discourage contractors from reducing the compensation of workers." Letter for John O. McGinnis, Deputy Assistant Attorney General, Office of Legal Counsel, from Monica Gallagher, Associate Solicitor, Fair Labor Standards Division, Department of Labor at 7-8 (July 14, 1989).

Finally, we note that the use of volunteer workers under the SCA — such as Commerce proposes with respect to the NOAA library contract — may be considered on a contract-by-contract basis pursuant to a request for a variance or exemption from the Act's minimum wage requirements in accordance with the standards set forth in 41 U.S.C. § 353(b) and the regulations at 29 C.F.R. § 4.123(b). *See* Letter for John O. McGinnis, Deputy Assistant Attorney General, Office of Legal Counsel,

---

¹¹(. continued)
his employees whose rate of pay is not governed by the Service Contract Act of 1965 .. or to whom subsection (a)(1) of this section is not applicable, wages at rates not less than the [minimum wage] rates provided for in subsection (b) of this section
29 U.S.C. § 206(e)(1).

from Monica Gallagher, Associate Solicitor, Fair Labor Standards Division, Department of Labor at 8 (July 14, 1989).[12] Accordingly, the Secretary of Commerce may petition the Secretary of Labor for an exemption to permit the use of volunteer employees under the NOAA contract.

## III. Conclusion

Our review of the Service Contract Act and its legislative history persuades us that the Act does not permit the implication of an exemption for contracts that provide for services rendered by volunteer employees. Commerce remains free, of course, to petition the Secretary of Labor for an exemption specifically relating to the NOAA contract.

WILLIAM P. BARR
*Assistant Attorney General*
*Office of Legal Counsel*

---

[12] According to the Solicitor, Commerce has neither requested such an exemption nor provided Labor with the information necessary to evaluate such a proposal. *Id.* at 8-9 & n 6