[No. B038563. Second Dist., Div. Six. Oct. 10, 1989.]

CHERYL AUCHMOODY et al., Plaintiffs and Appellants, v. 911 EMERGENCY SERVICES, Defendant and Respondent.

1512

**COUNSEL**

Hatch & Parent and Thomas D. Wise for Plaintiffs and Appellants.

Cappadona & Oldman, L. A. Cappadona, Jeanne A. Taylor, Schramm & Raddue and Kurt H. Pyle for Defendant and Respondent.

Bronson, Bronson & McKinnon and Robert W. Tollen as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**STONE (S. J.), P. J.**—Here we are asked to decide whether the trial court erred when it ruled the "24-hour agreements" signed by employees

conformed to Wage Order 9-80, subsection 3(G) and were not waiver agreements. We find it did not and affirm judgments entered in favor of respondent.

## FACTS

Respondent, 911 Emergency Services, provides ambulance and paramedic services to the general public of Santa Barbara and several other counties in California. Appellants are paramedics and emergency medical technicians previously or currently employed by respondent in Santa Barbara County. Under the terms of their employment, they worked 24-hour shifts.

The California Labor Code empowers the California Industrial Welfare Commission (IWC) to establish conditions of employment for all employees in the state. (*Industrial Welfare Com.* v. *Superior Court* (1980) 27 Cal.3d 690, 701 [166 Cal.Rptr. 331, 613 P.2d 579].) In 1980, the IWC promulgated wage and hour regulations currently in effect which govern calculation and payment of overtime compensation. Wage Order 9-80, subsection 3(A) provides for a basic eight-hour workday and a forty-hour workweek and specifies the applicable rate of overtime for hours worked above eight in a day or forty in a week. (See Cal. Admin. Code, tit. 8, § 11090, subd. (3)(A), now Cal. Code Regs.)

Wage Order 9-80, subsection 3(G) (formerly 3 (H)), provides: "The daily overtime provision of subsection (A) above shall not apply to ambulance drivers and attendants scheduled for twenty-four (24) hour shifts of duty who have agreed in writing to exclude from daily time worked not more than three (3) meal periods of not more than one hour each and a regularly scheduled uninterrupted sleeping period of not more than eight (8) hours. The employer shall provide adequate dormitory and kitchen facilities for employees on such a schedule."[1]

Each appellant signed an agreement containing the following provisions: "I, _____ , understand and agree that in the course of my employment with 911 Emergency Services Inc. that I will be scheduled for 24 hour shifts of duty and I further understand and agree that mealtime (3 meal periods not to exceed one hour each) and a scheduled sleep period (not to exceed 8 hours) need not be considered as hours worked. [¶] I understand and agree that I will be paid for 24 hours out of each 24 hour shift even though not all of those hours would be considered as hours worked. [¶] I understand and agree that an amount not less than time and one half of my

---

[1] We are required to take judicial notice of the contents of regulations printed or incorporated by appropriate reference into the California Code of Regulations. (Gov. Code, § 11344.6.)

regular hourly rate of pay shall be paid for all work in excess of 40 hours in any one calendar week. [¶] . . . . [¶] I understand and agree to the provisions of Federal and State Laws which provide that an ambulance employee working a 24 hour shift may have not more than 8 hours of each shift deducted for sleep time and that employers electing to pay an employee by these rules need not consider those periods as hours worked. I understand that interruptions of the sleep or meal periods will be considered hours worked. [¶] I understand and agree that 911 Emergency Services Inc., has elected not to deduct any time for sleep or meal periods and will pay for all sleeping and meal times while I am on duty regardless of interruption."[2] Nine-eleven paid all employees straight time for twenty-four hours.

In October 1985, 15 current and former employees [joined by 13 more in a companion case later consolidated with the first] filed suit against respondent alleging that appellants worked 24-hour shifts of duty, were entitled to daily overtime pursuant to Wage Order 9-80, and that respondent did not pay the statutorily required overtime. During the course of proceedings in the lower court, appellants amended the complaints six times, adding allegations that the twenty-four-hour agreement was an invalid waiver and that rescission of the agreement should be granted due to fraud or mistake.

The parties filed cross-motions for summary adjudication of issues concerning the validity of the agreements. The trial court held the agreements valid and in compliance with the provisions of subsection 3(G). The trial court also found that Wage Order 9-80 was not a waiver provision, and that appellants had no right to be hired on any basis other than that to which they had agreed.

The trial court granted respondent's motion to strike appellants' first cause of action on grounds that since the court found the agreements valid on their face, appellants were not entitled to daily overtime. It also sustained a demurrer without leave to amend to appellants' third cause of action regarding appellant Ysebrands, who had signed his agreement in San Joaquin County.

The parties filed cross-motions for summary judgment concerning the issues of fraud and mistake. Appellants declared they did not understand, nor was it explained to them, that by signing the 24-hour agreements they were waiving their right to daily overtime. Appellants also presented deposition testimony of respondent's management to demonstrate that respon-

---

[2] In the summer of 1985, the employees' collective bargaining unit, of which all appellants still working for respondent were members, entered into an agreement with respondent on the same terms as expressed in the above agreement, i.e., calling for overtime only after 40 hours in a work week.

dent did not intend the effect of the agreement to be a deprivation of daily overtime.

Respondent countered that since the court had ruled previously that Wage Order 9-80 was not a waiver provision and that there was no right to daily overtime for appellants to waive, any fraud or mistake relating to the existence of daily overtime or the effect of the agreement on their right to daily overtime was immaterial. The trial court granted respondent's motion and denied that of appellants for summary judgment.

Appellants seek reversal of each of the court's rulings and request entry of judgment in their favor declaring the agreements either void on their face, or void as the result of fraud or mistake. Resolution of each challenge made to the court's ruling depends upon the correctness of the court's finding that the 24-hour agreements were valid, conformed to subsection 3(G), and were not waiver provisions.

## DISCUSSION

### 1. *Standard of Review and Rules of Construction*

■ The summary judgment procedure is drastic, and, since it denies the right of the adverse party to a trial, should be used with caution. (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134].) Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no issue of fact to be tried. (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) The moving party correctly has the burden of establishing through supporting documents that the adverse party's claims are entirely without merit on any legal theory. (*Ibid.*) Affidavits of the moving party should be strictly and those of his opponent liberally construed. (*Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 556 [122 P.2d 264].) Issue finding rather than issue determination is the pivotal factor in summary judgment. (*Mann* v. *Cracchiolo, supra,* 38 Cal.3d 18, 36; *Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 441 [116 P.2d 62].)

■ Legislative enactments authorizing regulation of wages, hours, and working conditions are for the protection and benefit of the employees. (*Industrial Welfare Com.* v. *Superior Court, supra,* 27 Cal.3d 690, 702.) These remedial statutory provisions are to be liberally construed to promote such protection. (*Ibid.*; see also *Menlo Service Corp.* v. *United States* (9th Cir. 1985) 765 F.2d 805, 809-810.) To such end, a court must, whenever possible, interpret statutes to make them workable and reasonable to achieve a practical, rather than technical, application. (*Intoximeters, Inc.* v.

*Younger* (1975) 53 Cal.App.3d 262, 270 [125 Cal.Rptr. 864]; *Barnes* v. *Chamberlain* (1983) 147 Cal.App.3d 762, 766 [195 Cal.Rptr. 417].) Exceptions to the general rule are to be strictly construed. (*Ibid.*; *Menlo Service Corp.* v. *United States, supra,* 765 F.2d 805, 809, 810.)

The same rules of construction and interpretation which apply to statutes govern the construction and interpretation of rules and regulations of administrative agencies. (*Cal. Drive-in Restaurant Assn.* v. *Clark* (1943) 22 Cal.2d 287, 292 [140 P.2d 657, 147 A.L.R. 1028].) ■ The construction of an administrative regulation and its application to a given set of facts are matters of law. (*Goddard* v. *South Bay Union High School Dist.* (1978) 79 Cal.App.3d 98, 105 [144 Cal.Rptr. 701].) The reviewing court is not bound by the trial court's resolution if facts essential to the determination are not in conflict. (*Ibid.*) Even then, a reviewing court does not conduct a totally independent review of the regulation or administrative rule. (*Young* v. *State Board of Control* (1979) 93 Cal.App.3d 637, 640 [156 Cal.Rptr. 91].) A statute that has received an administrative interpretation comes to the reviewing court with a strong presumption of regularity. (*Ibid.*; see also *Standard Oil Co.* v. *Feldstein* (1980) 105 Cal.App.3d 590, 602, fn. 15 [164 Cal.Rptr. 403].)

## 2. *The 24-hour Agreements*

Appellants claim the 24-hour agreements do not comply with Wage Order 9-80, subsection 3(G) because 3(G) allows respondent to avoid paying daily overtime if appellants ". . . have agreed in writing to exclude from daily time worked not more than three (3) meal periods of not more than one hour each and a regularly scheduled uninterrupted sleeping period of not more than eight (8) hours." (Cal. Code Regs., tit. 8, § 11090, subd. 3(G).) Appellants maintain that the sixth paragraph of the agreement, which acknowledges respondent's election not to deduct for sleep or meal periods, negates subsection 3(G). They further indicate that respondent's responses to requests for admissions by respondent's manager, James Ridenour, corroborate the fact that respondent did not exclude mealtime and sleep time from daily hours worked.

A reading of the entire agreement reveals that the employee acknowledges that mealtime and sleep periods need not be considered hours worked even though, in this instance, respondent elects to pay for those hours. Nonetheless, appellants assert that 3(G) requires that *some* hours be excluded from hours paid, and since respondent chose to pay for all 24 hours worked, the agreement is invalid. The court found this interpretation illogical and so do we. If the employer could legally pay for only 13 hours of work so long as the employees agreed that sleep and meal times were

excludable from hours worked up to a maximum of 11 hours, we fail to comprehend how or why the agreement is invalidated by the employer's willingness to pay for more than the minimum 13 hours.

California Ambulance Association, amicus curiae here and in the trial court, asserts that 3(G) provides a *maximum* number of hours excludable for meal and sleep time by the employer in a 24-hour shift. This interpretation comports with documents submitted by respondent concerning IWC hearings on subsection 3(G) at the time it was promulgated.

Appellants objected in court and reiterate here that the court should not consider transcripts and declarations concerning conversations with Beatrice Christensen, former assistant chief of the IWC, as an expression of administrative interpretation. They assert that there is a well justified judicial reticence to rely on the expressions of individual legislators as evidence of any legislative intent or purpose or interpretation. (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 258 [104 Cal.Rptr. 761, 502 P.2d 1049].)

■ The trial court declined to rule on objections to the Christensen documents since it found the evidence irrelevant to its determination of the agreement's validity. Even though the transcript of conversations with Ms. Christensen and her interpretation of what the 24-hour agreement should contain might not be entitled to official sanction, respondent presented declarations of persons who attended hearings on Wage Order 9-80 and who were intimately involved with its drafting. These declarations were relevant to respondent's knowledge of the order and adoption of an agreement to conform with it. Moreover, even the Christensen transcript was admissible for the nonhearsay purpose of explaining respondent's action in adopting the form of the agreement.

Robert Tollen established his experience and expertise in the field of labor law particularly concerning wage and hour provisions. He was qualified to review the historical background of the Wage Order and his personal knowledge of its administrative adoption in which he participated as an expert. (See *Western Medical Enterprises, Inc.* v. *Albers* (1985) 166 Cal.App.3d 383, 392 [212 Cal.Rptr. 434].)

Moreover, the Law Revision Commission Comment to Evidence Code section 450 provides that, "Under the Evidence Code, as under existing law, courts may consider whatever materials are appropriate in construing statutes, determining constitutional issues, and formulating rules of law. That a court may consider legislative history, discussions by learned writers in treatises and law reviews, materials that contain controversial economic and

social facts or findings or that indicate contemporary opinion, and similar materials is inherent in the requirement that it take judicial notice of the law. In many cases, the meaning and validity of statutes, the precise nature of a common law rule, or the correct interpretation of a constitutional provision can be determined only with the help of such extrinsic aids."

■ We concur with the trial court's finding that an otherwise valid agreement under subsection 3(G) is not rendered invalid just because it contains provisions that the employer has voluntarily elected to pay some or all of the 11 hours which the employee has agreed is excludable. The IWC's published statement concerning the basis upon which Wage Order 9-80 is predicated states in pertinent part, "With regard to subsection (H) [now G] in this order, in 1976 the Commission recognized the unique need for 24-hour coverage by ambulance service and the special circumstances under which most ambulance drivers work, and allowed relaxation of daily overtime requirements for such drivers under certain protective conditions."

Although perhaps not a model of clarity, the agreement comports with the language of the wage order (which is also not crystal clear). The IWC's statement of intent discloses that the purpose of subsection 3(G) is to liberalize the usual daily overtime provisions of 3(A). This is accomplished by allowing the employer to establish 24-hour shifts at the regular hourly rate so long as the employer excludes no more than 11 hours for meal and sleep time and ensures that the employee understands and agrees that the employer may exclude those hours from hours worked.

Appellants' analogy to refundable security deposits (see Civ. Code, § 1950.5) is not apropos. Civil Code section 1950.5 contains no provision analogous to that of subsection 3(G). To the contrary, landlords are precluded from extracting an agreement from tenants that a security deposit is nonrefundable expressly by Civil Code section 1950.5, subdivision (*l* ).

3. *Fraud or Mistake*

Appellants persist that it was reversible error to grant summary judgment premised upon a finding that any fraud or mistake relating to the execution of the agreement was immaterial since it is undisputed that appellants did not know and were not told of the usual overtime pay provisions in Wage Order 9-80. Appellants contend that respondents either did not themselves know that the effect of the agreement was to waive usual daily overtime compensation or knowingly withheld this information when respondent conditioned appellants' employment on the signing of these agreements.

■ Appellants cannot point to evidence of a triable issue of fact on the issue of mutual mistake; they allude to a differing legal interpretation of the

wage order. Concerning the materiality of any fraud in the inducement, the trial court aptly stated that "for either a nondisclosure or mistake to have legal significance it must be material to the transaction in this case, the creation of the employer-employee relationship. The provisions of Subsection 3 (A) of IWC Order 9-80 are not material to the transaction involved in this case. The Daily Overtime provisions of Subsection 3 (A) are not subject to negotiation, i.e., plaintiff's right to employment was conditioned upon acceptance of the terms of the '24-hour agreements.'"

We agree. It is undisputed that no other ambulance service pays daily overtime and that no appellant had ever worked at such rate or had been offered a job which paid daily overtime for similar work. It is also undisputed that each appellant (except Gainley) believed that employment was conditioned upon signing the agreement.[3] To constitute a waiver, it is essential that there be an existing right or legal entitlement to waive. (*Outboard Marine Corp.* v. *Superior Court* (1975) 52 Cal.App.3d 30, 41 [124 Cal.Rptr. 852].)

Appellants had no preexisting right to daily overtime which they could waive. They had no right to be hired on any basis other than that set forth in the agreement. Appellants could not accept employment on specified conditions, and unilaterally change them after they were hired. They received exactly what they were promised—that respondent would pay for all hours worked and that they would be compensated for overtime above 40 hours in a week. Consequently, the trial court did not err in striking the first cause of action.

### 4. *Ysebrands's Agreement*

■ Appellants contend the trial court erred in granting a demurrer without leave to amend to the third cause of action in the fifth amended complaint concerning appellant Ysebrands who sought daily overtime for the time he worked in Santa Barbara County because he signed his agreement with respondent in San Joaquin County. He claims the agreement is ambiguous and that he should have been allowed to submit extrinsic evidence to prove his interpretations. We disagree. The agreement Ysebrands signed does not contain language limiting its scope to San Joaquin County. It contains provisions similar to all other agreements. Wage order 9-80, subsection 3(G) is not limited to Santa Barbara County. The only difference in Ysebrands's agreement is reference to "first call," "second call," "medic

---

[3] The court allowed Gainley to pursue a cause of action for unpaid overtime because Gainley apparently did not sign the agreement until some time after he commenced his employment.

41" and "medic 42," phrases having to do with whether he would be paid for 13 or 21 hours out of each 24-hour shift.

## 5. *Appellants' Cross-motions for Summary Judgment*

Appellants urge us to reverse the trial court's granting respondent's motion and, instead, direct entry of summary judgment in their favor because they did not know about the daily overtime provisions when they signed the agreements. We decline to do so because we find the trial court correctly held their cross-motions moot once it decided to grant respondent's motion. Since the 24-hour agreement comports with subsection 3(G) and is not a waiver provision, appellants can establish no triable issue of fact material to resolution of their claim.

We affirm the trial court's rulings.

Costs to respondent.

Gilbert, J., and Abbe, J., concurred.