Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

UNION PACIFIC MOTOR FREIGHT COMPANY, a Corporation, Defendant-Appellee.

No. 79–3273.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 1981.

Decided July 13, 1981.

Kerry L. Adams, Dept. of Labor, Washington, D. C., argued, Daniel W. Teehan, San Francisco, Cal., Lois G. Williams, Washington, D. C., on brief, for plaintiff-appellant.

Robert M. White, Vorkink, White, Bishop & Asay, Los Angeles, Cal., for defendant-appellee.

Before SCHROEDER, PREGERSON, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

The Secretary of Labor seeks to enjoin Union Pacific Motor Freight Company from failing to pay past and future overtime compensation to its dispatchers. The Secretary contends that Union Pacific's failure to pay overtime violates section 7 of the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1). He also contends that the violation was "willful" and that the three year statute of limitations applies. 29 U.S.C. § 255(a). Union Pacific argues that its dispatchers' duties affect the safety of operation of vehicles used in interstate commerce and that its dispatchers are subject to regulation by the Secretary of Transportation under section 4 of the Motor Carrier Act, 49 U.S.C. § 304, and therefore exempt from the overtime provisions of the Fair Labor Standards Act under 29 U.S.C. § 213(b)(1). Union Pacific also contends that even if its dispatchers are not exempt from the overtime provision of the Fair Labor Standards Act, the failure to pay overtime compensation was not "willful" and any recovery should be subject to the two rather than the three year statute of limitations.

The district court found that Union Pacific's dispatchers are exempt from the overtime provisions of the Fair Labor Standards Act. The court concluded that their duties affect the safety of operation of defendant's business and that the power to regulate their qualifications and hours of service is vested in the Secretary of Transportation. The court also found, alternatively, that the defendant's failure to pay overtime compensation was not "willful" within the meaning of the Act's limitations provision. Therefore, the district court held that any claim for unpaid compensation would be subject to the two year statute of limitations.

### Background

The defendant, Union Pacific Motor Freight Company, operates as a motor common carrier and is engaged in the movement of goods in interstate commerce. Union Pacific operates under the authority of the Interstate Commerce Commission (hereinafter ICC). Pursuant to this authority, Union Pacific handles freight that moves in part by rail on rail bills of lading at rail rates. There is no dispute that Union Pacific is a covered employer within the meaning of the Fair Labor Standards Act.

The facts regarding the nature of the dispatchers' duties are not in dispute. During the period in question, Union Pacific's

dispatchers performed both as inside dispatchers and outside, or gate, dispatchers. Inside dispatchers schedule and direct the pickup and delivery of trailers and containers that move over the railroad. They transmit the alignment schedule for train loading and unloading as established by the railroad foremen. Further, on certain limited occasions inside dispatchers have performed other duties, including the loading and unloading of trailers from flatcars.

The job of outside, or gate, dispatcher was created to control unsafe and congested conditions inside the terminal that inside dispatchers could not effectively handle when Union Pacific's business expanded. Outside dispatchers stand at the gate to the rail yard to check trailers in and out when they are brought to the terminal for loading onto, or are leaving the terminal after being unloaded from, rail flatcars.

Union Pacific's dispatchers inspect the company's trailers and containers for defects and damage. Thus, they carry out, in part, Federal Highway Administration inspection, repair, and maintenance regulations. 49 C.F.R. § 396 (1980). They have received some instruction from Union Pacific in the application and enforcement of Federal Highway Administration regulations on the transportation of hazardous materials, and review shipping documents to assure proper notations regarding hazardous materials. 49 C.F.R. § 397 (1980). They inspect shipments of hazardous materials to ensure that the containers and vehicles are properly placarded. Inspection of such shipments is required by Department of Transportation regulation, 49 C.F.R. § 177.823 (1979).

In 1966 the Department of Labor conducted an investigation of defendant's failure to pay overtime compensation to dispatchers. At the completion of the investigation, representatives of the Department and the company met and discussed the requirements of the Fair Labor Standards Act and their applicability to the company. The record is far from complete with respect to the ultimate position taken by the parties at that time; however, as a result of the discussion, Union Pacific raised the dispatchers' monthly salary and the Department took no further action. Union Pacific contends that "no significance" should be attached to "this event" and does not urge that the Department acquiesced in the company's actions, misled it in any way, or proferred any erroneous advice, either tacitly or expressly.

The Secretary of Labor has charged Union Pacific with failure to pay overtime compensation to dispatchers for the period since December 1, 1974. During this period Union Pacific paid its dispatchers a straight monthly salary for all hours worked, with no overtime compensation for hours in excess of forty per week.

### The Section 7 Violation

■ Section 7 of the Fair Labor Standards Act requires the payment of overtime compensation to employees covered by that section.[1] Overtime compensation must be paid at not less than one and one half times the regular hourly rate for hours worked in excess of 40 hours per week. Section 7; however, does not cover all employees who are subject to the Act generally. Section 13(b)(1) of the Act[2] exempts from the overtime compensation provision those employees who are subject to the jurisdiction of the Secretary of Transportation under section 4 of the Motor Carrier Act, 49 U.S.C.

1. 29 U.S.C. § 207(a)(1) provides:
 Except as otherwise provided in this section, no employer shall employ any of his employees ... for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed ....

2. 29 U.S.C. § 213(b) provides:
 The provisions of section 207 of this title shall not apply with respect to—
 (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49 ....

§ 304.[3] There is no concurrent coverage of section 7 of the Fair Labor Standards Act and section 4 of the Motor Carrier Act. *Levinson v. Spector Motor Service,* 330 U.S. 649, 661, 67 S.Ct. 931, 938, 91 L.Ed. 1158 (1947).

 The jurisdiction of the Secretary of Transportation under the Motor Carrier Act is "limited to those employees [of common carriers] whose activities affect the safety of operation. The [Secretary of Transportation] has no jurisdiction to regulate the qualifications or hours of service of any others." *United States v. American Trucking Ass'ns, Inc.,* 310 U.S. 534, 553, 60 S.Ct. 1059, 1069, 84 L.Ed. 1345 (1940).[4] For purposes of the section 13(b)(1) exemption of the Fair Labor Standards Act, the Secretary of Transportation need only possess the power to regulate the employees in question. He need not have exercised that power. *Levinson,* 330 U.S. at 678, 67 S.Ct. at 946; *Southland Gasoline Co. v. Bayley,* 319 U.S. 44, 46–50, 63 S.Ct. 917, 918–920, 87 L.Ed. 1244 (1943). Thus, if Union Pacific's dispatchers' activities affect the safety of operation of motor vehicles, they are exempt from the Act's overtime compensation requirement under section 13(b)(1). *Levinson,* 330 U.S. at 671, 67 S.Ct. at 942; *American Trucking Ass'ns, Inc.,* 310 U.S. at 553, 60 S.Ct. at 1068; *Crooker v. Sexton Motors, Inc.,* 469 F.2d 206, 209 (1st Cir. 1972).

· Following *American Trucking Ass'ns, Inc.,* the ICC issued a report defining, both affirmatively and negatively, the extent of its jurisdiction to prescribe regulations under the Motor Carrier Act. 28 M.C.C. 125, Ex parte Nos. MC–2 and MC–3 (March 3, 1941). Limiting its jurisdiction to "those employees who devote a *substantial* part of their time to activities which *directly affect* the safety of operation of motor vehicles" in interstate commerce, *id.* at 139, the ICC concluded that drivers, mechanics, loaders and helpers employed by common carriers fall into that category. The Commission excluded from its jurisdiction all other classifications of employees, expressly listing *dispatchers* as among those employees whose activities do not directly affect safety of operation.[5] The Supreme Court in *Levinson,* 330 U.S. at 669, 67 S.Ct. at 941, and a companion case, *Pyramid Motor Freight Corp. v. Ispass,* 330 U.S. 695, 706–707, 67 S.Ct. 954, 959–960, 91 L.Ed. 1184 (1947), approved both the affirmative and negative elements of the ICC's definition of its jurisdiction.

Union Pacific contends that the duties of its dispatchers present a situation not addressed by the ICC or by the Supreme Court in the earlier era of *Levinson* and *Pyramid Motor.* Union Pacific notes that since *Levinson* the jurisdiction of the ICC over employees whose activities affect safety of operation has been transferred to the Secretary of Transportation. 49 U.S.C. § 1655(e)(6)(C).[6] The company points out that the Secretary of Transportation has adopted regulations regarding (1) placarding of hazardous materials, 49 C.F.R. § 177.-823 (1979), (2) inspection and maintenance, 49 C.F.R. § 396 (1980), and (3) identifica-

**3.** 49 U.S.C. § 304 provides:
 (a) It shall be the duty of the Commission—
 (1) To regulate common carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to ... qualifications and maximum hours of service of employees, and safety of operation and equipment.

**4.** Pursuant to section 304(a)(3) of the Motor Carriers Act of 1935, 49 U.S.C. §§ 301–327, the power to regulate the operation of private motor carriers involved in interstate commerce was vested in the ICC. Such power was subsequently transferred to the Secretary of Transportation. 49 U.S.C. § 1655(e)(1), (6)(C). *See* note 6, *infra.*

**5.** *See* note 9, *infra.*

**6.** Section 1655 provides:
 (e) There are hereby transferred to and vested in the Secretary [of Transportation] all functions, powers, and duties of the Interstate Commerce Commission ... under—
 (6) the following provisions of the Interstate Commerce Act, as amended—
 (C) relating generally to qualifications and maximum hours of service of employees and safety of operation and equipment: Sections 204(a)(1) and (2) ... and sections 204(a)(3), (3a), and (5) [49 U.S.C. § 304].

tion, on the bill of lading, of hazardous materials, 49 C.F.R. § 397.19 (1980), all of which impose duties on motor carriers.[7] Union Pacific's dispatchers perform certain limited inspection and enforcement duties pursuant to these regulations, such as reviewing documents to see that they contain the necessary information and ensuring proper placarding of vehicles carrying hazardous materials. Union Pacific argues that the performance of duties which implement safety regulations necessarily involves the performance of duties that directly affect safety of operation. Therefore, Union Pacific contends, its dispatchers are exempt from coverage of the overtime compensation provision of the Fair Labor Standards Act.

Normally, whether duties *directly* affect safety of operation of interstate motor carriers and constitute a substantial part of the employees' activities is a matter for the Secretary of Transportation to determine. *Levinson*, 330 U.S. at 669, 67 S.Ct. at 941.[8] Decisions regarding in which duties affect safety, and in what manner, require the Secretary's special knowledge and experience. *Pyramid Motor*, 330 U.S. at 707, 67 S.Ct. at 960. Similarly, if the times, or the nature of job classifications, change, it is the Secretary of Transportation's function to reexamine the existing classifications. Only after the Secretary has had the opportunity to make the requisite determination regarding the new duties and to decide whether to establish new classifications or revise the current classifications, should the court consider whether the duties of particular employees place them within his jurisdiction under the Motor Carrier Act.

In this case, however, it has long been determined that the basic duties of dispatchers do not bring them within the jurisdiction of the Secretary of Transportation for purposes of section 4 of the Motor Carrier Act. The new or additional duties cited by Union Pacific are not significantly different in nature from those considered by the ICC in its original ruling excluding dispatchers. When the ICC decided that dispatchers were not covered by section 4 of the Motor Carriers Act, it applied a proximate cause test. It excluded dispatchers for the reason that, while errors in judgment made by dispatchers might result in accidents, those errors are not the proximate cause of such accidents.[9] Thus the ICC concluded that dispatchers' duties did not *directly* affect the safety of operation of motor vehicles. The duties referred to by Union Pacific in this case have, at most, an equally indirect effect. Moreover, it is doubtful that they constitute a substantial part of the dispatchers' activities. Reviewing documents to see that proper notations have been made and inspecting vehicles to insure that proper placards have been attached would not, in our view, meet the test adopted by the ICC. Nor would the other comparatively minor inspection duties. Union Pacific's dispatchers therefore fall squarely within the dispatcher classification previously established by the ICC.

We do not find persuasive Union Pacific's argument that the performance of duties

---

7. The latter two regulations were adopted by the Federal Highway Administration under authority delegated by the Secretary of Transportation. 49 C.F.R. Part 396 at 470, and Part 397 at 473 (1980); 49 C.F.R. § 1.4(c) contains the delegation of authority.

8. The *Levinson* Court stated that "these findings of fact [as to what employee classifications affect safety] are squarely within the jurisdiction of the [Secretary of Transportation]." 330 U.S. at 669, 67 S.Ct. at 942.

9. The ICC stated:
It is contended that if a dispatcher by an error in judgment assigns a vehicle of insuffi-

cient size and weight-carrying capacity to transport a load, or calls a driver to duty who is sick, fatigued, or otherwise not in condition to operate the vehicle, or requires or permits the vehicle to depart when the roads are icy and country to be traversed is hilly, an accident may result. While this may be true, it is clear that such errors in judgment are not the proximate causes of such accidents, and that the dispatchers engage in no activities which directly affect the safety of operation of motor vehicles in interstate or foreign commerce.
28 M.C.C. at 135.

contemplated by safety regulations necessarily involves the performance of duties that directly affect safety. Were Union Pacific correct, any employer could rid itself of the obligation to pay overtime compensation by the simple expedient of parcelling out among his employees the various inspection and enforcement duties imposed by governmental safety regulations. We do not think that when the safety regulations were promulgated it was intended that every employee involved in their administration would, ipso facto, be exempted from the overtime provisions of the Fair Labor Standards Act. Unless and until the Secretary considers the issue of what effect, if any, the new duties of dispatchers have upon the existing classification,[10] Union Pacific's dispatchers, like all other dispatchers, are entitled to the protection and benefits of section 7 of the Fair Labor Standards Act.

Union Pacific also argues that loading activities sometimes performed by inside dispatchers place them within the classification "partial-duty loaders," a classification which is within the jurisdiction of the Secretary of Transportation. *Levinson*, 330 U.S. at 651–653, 675, 67 S.Ct. at 933–934, 944. The district court in its findings of fact stated that Union Pacific's inside dispatchers "are flexible in the work they perform in various job classifications, often on a fill-in basis, including the loading and unloading of trailers from flatcars." While it is not clear what significance if any the district court attached to this finding, there is no evidence whatsoever in the record that would support a finding that Union Pacific's dispatchers are "partial-duty loaders." The only evidence that Union Pacific points to is a statement that during strikes and work stoppages its management personnel, including dispatchers, operate equipment normally operated by loaders. That fact cannot by any stretch of the imagination or distortion of legal theory turn dispatchers into "partial-duty loaders." *See Levinson*, 330 U.S. at 673–674, 67 S.Ct. at 943–944; *Pyramid Motor*, 330 U.S. at 708, 67 S.Ct. at 960.[11]

### Statute of Limitations

We next consider whether the applicable statute of limitations is two or three years. Under the Fair Labor Standards Act, an action to recover unpaid overtime compensation is barred unless commenced within two years after the cause of action accrues, except where the violation of the Act was "willful," in which case the action may be commenced within three years. 29 U.S.C. § 255.[12] The Secretary of Labor argues that the district court erred in determining that Union Pacific's failure to pay overtime wages to the dispatchers was not "willful." We agree with the Secretary.

This circuit has not adopted a standard for determining whether violations of the Act are "willful" for purposes of section 255. Other circuits' decisions, however, provide useful guidance. We agree basically with the approach the District of Columbia and Fifth Circuits have taken.

---

**10.** Union Pacific has chosen not to initiate any proceedings regarding this matter before the Secretary of Transportation or to request any ruling from him. Union Pacific's counsel stated during oral argument that the Company is reluctant to become involved unnecessarily in any proceeding before government agencies. Thus, Union Pacific has in effect chosen to accept for purposes of this lawsuit the classifications as they currently stand.

**11.** As the court noted in *Pyramid Motor*:

In contrast to the loading activities in the *Levinson* case, the mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a motor carrier truck may form so trivial, casual, or occasional a part of an employee's activities ... that his activities will not come within the kind of "loading" which is described by the Commission and which, in its opinion, affects safety of operation.

330 U.S. at 708, 67 S.Ct. at 960 (citation omitted).

**12.** Section 255 provides:

Any action ... to enforce any cause of action for ... unpaid overtime compensation ... under the Fair Labor Standards Act ...—

(a) ... may be commenced within two years after the cause of action accrued ... except that a willful violation may be commenced within three years after the cause of action accrued; ...

In *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429 (1976), the District of Columbia Circuit said:

[T]he employer's noncompliance is "willful" when he is cognizant of an appreciable possibility that he may be subject to the statutory requirements and fails to take steps reasonably calculated to resolve the doubt. We think too, that the same conclusion follows when an equally aware employer consciously and voluntarily charts a course which turns out to be wrong.

*Id.* at 461–62 (footnotes omitted).

The Fifth Circuit has adopted a similar test. In *Brennan v. Heard*, 491 F.2d 1 (1974), the Fifth Circuit, relying in part on *Coleman v. Jiffy June Farm's, Inc.*, 458 F.2d 1139 (5th Cir. 1972), stated that "[a]n employer acts willfully and subjects himself to the three year liability provision if he knows or has reason to know, that his conduct is *governed by* the Fair Labor Standards Act." 491 F.2d at 3 (emphasis in original).

In *Laffey* the employer was aware of the Equal Pay Act (an addition to the Fair Labor Standards Act)[13] and familiar with its provisions. The company had reviewed the Act to determine its possible applicability, but erroneously concluded that it did not apply. 567 F.2d at 462. The District of Columbia Circuit found the violation to be "willful," stating that "there is no good reason for translating the employer's error into loss of pay for the employee." *Id.* at 461.

In *Heard* the employer "knew of the existence of the Fair Labor Standards Act and had 'heard talk' that recent amendments had extended coverage to those in the position of his employees." 491 F.2d at 3. The Fifth Circuit found that the defendant's unwillingness to determine his statutory obligation under the Act did not protect him from the three year statute of limitations: "[a]n ostrichlike cultivation of ignorance has never been considered a defense to liability for willful violation of the Act." *Id.* (citation omitted). According to

the *Heard* court, previous cases, including *Jiffy June*, "established that neither a good faith belief in the lawfulness of his wage and overtime regulations nor complete ignorance of their invalidity shields the employer from the additional year of liability." *Id.*

In *Jiffy June* the employer was aware that a change in his overtime pay rules might violate the Act. However, he implemented the change on the basis of his counsel's advice that it was lawful. The Fifth Circuit found the violation to be "willful," saying:

The advice of counsel to proceed with a favorable wage settlement which undercuts the FLSA would be an easy way of circumventing the requirements of the Act—far too easy a way for us to assume that Congress intended to subject employees to the strict two-year limitations period whenever an employer's lawyer had given him the green light to restructure their pay.

458 F.2d at 1141–42.

■ We agree that an employer should not be relieved of its statutory obligation to pay its employees overtime compensation merely because of its own error. Nor should an employer's assertion of ignorance of the Act's requirements be sufficient to negate willfulness. Further, we agree that an employer's reliance on the incorrect advice of counsel should not excuse the employer from the three year statute of limitations. However, we believe that a violation is not "willful" if the employer relies in good faith on the erroneous advice of an appropriate government agency.

■ Accordingly, we adopt the following rule for determining willfulness under section 255: A violation is willful when the employer was, or should have been, cognizant of an appreciable possibility that the employees involved were covered by the statutory provisions. Reliance on erroneous advice is no bar to a finding of a "willful"

**13.** Pub. L. No. 88–38, sec. 3, 77 Stat. 56 (1963), *codified in* 29 U.S.C. § 206(d)(1) (1976).

violation, except for good faith reliance upon advice rendered by an appropriate government agency.

 Union Pacific's conduct constitutes a "willful" violation of the Act under the test set forth above. As long ago as 1941, the ICC had determined that dispatchers were not within its jurisdiction (now the Secretary of Transportation's) under the Motor Carrier Act for purposes of regulating hours of service, and that their duties did not affect the safety of operation of interstate motor carriers. In addition, the Department of Labor investigated Union Pacific's failure to pay its dispatchers overtime wages in 1966 and discussed the problem with the company. Therefore, Union Pacific was or should have been cognizant of an "appreciable possibility" that its dispatchers were subject to the overtime requirements of the Fair Labor Standards Act.[14] Union Pacific argues that government regulations created "uncertainty" and that this should negate any finding of willfulness. Uncertainty is no defense to an allegation of "willfulness." Moreover, Union Pacific did not attempt to resolve the uncertainty by obtaining advice from the Secretary of Transportation or the Secretary of Labor.[15] Such unwillingness to obtain a determination as to the applicability of the Act further confirms our conclusion that the violation was "willful."

Union Pacific's failure to pay overtime compensation to dispatchers was a willful violation of the Act. The three year statute of limitations applies.

### Conclusion

The Secretary of Labor seeks both a prospective and a restitutionary injunction. We are aware of nothing in the record that would support a denial of either form of relief. *See Marshall v. Chala Enterprises,*

*Inc.,* 645 F.2d 799 at 804 (9th Cir., 1981). The decision of the district court is reversed and remanded for proceedings consistent with this opinion.

---

**14.** *See Hodgson v. Cactus Craft of Arizona,* 481 F.2d 464, 467 (9th Cir. 1973), where this court held that willfulness was established where two prior investigations resulted in warnings which were ignored by the employer.

**15.** Union Pacific's argument that the uncertainty arose because of an Internal Revenue Ser-

vice Ruling is imaginative but not persuasive. We should also note that we would not consider the Internal Revenue Service an "appropriate government agency" from which to obtain advice concerning the scope of the Fair Labor Standards Act or the Motor Carrier Act.