**Elizabeth DOLE, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**CIRCLE "A" CONSTRUCTION, INC., a corporation; and Marvin Aslett, an individual, Defendants.**

**Civ. No. 86–1437.**

United States District Court, D. Idaho.

June 1, 1990.

Daniel W. Teehan, Regional Sol., Matthew L. Vadnal, Office of the Sol., U.S. Dept. of Labor, Seattle, for plaintiff.

Carl Burke, Jeffery J. Ventrella, Elam, Burke and Boyd, Boise, Idaho, M. Gary Atkinson, Twin Falls, Idaho, for defendants.

## ORDER PARTIALLY GRANTING MOTIONS FOR PARTIAL SUMMARY JUDGMENT

RYAN, Chief Judge.

### I. BACKGROUND FACTS AND PROCEDURE

The above-entitled action arises under the Fair Labor Standards Act of 1938 (FLSA), as amended, 29 U.S.C. § 201, *et seq.* Plaintiff, the Secretary of Labor for the United States Department of Labor (hereinafter the "Secretary"), commenced this action on December 9, 1986, to enjoin the defendants from violating the overtime and record-keeping provisions of the FLSA and to obtain back wages for Circle A's employees. In addition to requesting unpaid overtime compensation owing to defendants' employees, plaintiff also seeks an equal amount in liquidated damages.

This court's jurisdiction is based on 29 U.S.C. § 216(b) of the FLSA. Plaintiff names as defendants, Circle "A" Construction, having its principal place of business in Twin Falls, Idaho, and Marvin Aslett, President of Circle "A" Construction. (Hereinafter, defendants will be collectively referred to as "Circle A.") Apparently, Circle A engages in the business of hauling

sugar beets from Amalgamated Sugar Company's receiving stations (beet dumps) to its sugar factories in Twin Falls and Paul, Idaho. Plaintiff contends that between December 9, 1983, and April 23, 1986, the defendant's employees engaged in work weeks of longer than 40 hours and did not receive overtime, to which they were entitled in the amount of one and one-half their regular rates of pay.[1] Because Circle A allegedly violated the monetary and reporting provisions of the FLSA, plaintiff prays for a judgment: (1) permanently enjoining Circle A from further conduct in violation of the FLSA; (2) awarding any unpaid overtime compensation due Circle A's employees named in Exhibit A of the Complaint (i.e., as Amended, February 8, 1989, to add additional names of employees); and (3) awarding an equal amount of liquidated damages and costs.

Currently before the court are cross-motions for partial summary judgment in which the parties principally seek a determination regarding which Circle A employees, if any, are exempt from the overtime compensation provisions of the Fair Labor Standards Act pursuant to 29 U.S.C. § 213(b)(1). This exemption is known colloquially as the "Motor Carrier Act exemption."[2] A hearing on such cross-motions was conducted before this court on January 26, 1990.

Having thoroughly considered the briefing, oral arguments, and supplemental briefing of the parties on this matter, this court is now ready to render its decision. Accordingly, based on the following standards and analysis, this court finds that, as a matter of law, Circle A's motion should be granted in part, and denied in part; and that the Secretary's motion should be granted in part and denied in part.

## II. CROSS–MOTIONS AND THE SUMMARY JUDGMENT TEST

### A. *Pending Motions*

1. *Circle A's Motion for Partial Summary Judgment.*

Circle A filed a Motion for Partial Summary Judgment based on the Motor Carrier Act Exemption to the FLSA, 29 U.S.C. § 213(b)(1). Specifically, Circle A contends that, as a matter of law, "the Fair Labor Standards Act expressly defers to the United States Department of Transportation's regulatory power...." Motion for Partial Summary Judgment, filed Feb. 27, 1989, at 2. Accordingly, Circle A maintains that it is entitled to a judgment which provides that, "29 U.S.C. Section 213(b)(1) exempts Circle A from having to comply with the [FLSA] and that plaintiff recover nothing on behalf of those Circle A employees falling within that exemption." *Id.*[3]

2. *Secretary's Cross Motion for Partial Summary Judgment.*

In light of Circle A's motion, the Secretary filed a cross-motion to have this court find, as a matter of law, that *only* those Circle A employees who were found subject to the Department of Transportation's jurisdiction during safety compliance reviews conducted in 1981 and 1987, fall under the motor carrier exemption, 29 U.S.C. § 213(b)(1).

---

1. The Secretary's Complaint focuses on the time period between December 9, 1983, and April 23, 1986. Violations occurring before December 9, 1983, are beyond the FLSA's three-year statute of limitations; and, the Secretary alleges that April 23, 1986, represents the approximate date on which the 1985–1986 beet haul ended.

2. The court notes that by Memorandum Opinion and Order dated August 28, 1987, this court previously denied a Motion to Dismiss which was filed by Circle A on the basis of the Agricultural Exemption to the FLSA, 29 U.S.C. § 213(b)(16). *Brock v. Circle A Constr., Inc.*, 680 F.Supp. 1460 (D.Idaho 1987). Although Circle A initially appealed that decision, it later withdrew its appeal. Hence, this marks the first time that this court has had an opportunity to consider the applicability of the Motor Carrier Act Exemption to Circle A.

3. Although, on its face, Circle A's motion merely seems to ask this court to state the obvious by finding that those employees exempt from the provisions of the FLSA *are* exempt, the briefing clearly conveys that Circle A seeks to have *all* of its drivers and mechanics excluded from the Secretary's cause of action under the motor carrier exemption.

B. *Preliminary Observations Regarding the Cross–Motions*

Oddly enough, to a certain extent, Circle A's motion and the Secretary's motion are actually consistent with one another. Both parties seek a ruling by this court that those Circle A employees subject to the jurisdiction of the Department of Transportation (hereinafter the "DOT") are exempt under the Motor Carrier Act from the overtime provisions of the FLSA. Thus, in effect, *both* parties request this court to state the obvious. Clearly, as will be discussed in the analysis portion of this order, under Section 213(b)(1), any employees subject to the jurisdiction of DOT are not concurrently subject to the jurisdiction of the Department of Labor. *See infra Morris v. McComb*, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947). However, both parties go much further than asking this court to state the obvious.

On one hand, the Secretary suggests that audits conducted by DOT in 1981 and 1987 should be determinative of the number of employees subject to DOT's jurisdiction, *and* that *only* those employees named at the time of *those* audits are exempted from the overtime provisions of the FLSA. This position goes too far because no audits were conducted between December 1983 and April 1986 which represent the relevant time periods at issue.

On the other hand, Circle A asks this court to go to the other extreme and find that because DOT conducted audits in 1981 and 1987, the DOT automatically had jurisdiction (whether exercised or not) over *all* drivers and mechanics—and, therefore, *all* Circle A drivers and mechanics are automatically foreclosed from the benefits of the FLSA.

C. *The Summary Judgment Test*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." U.S.C.S. Rules of Civil Procedure, Rule 56(c) (Law.Co-op.1987).

 The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In addressing the application of "The Summary Judgment Test," the Ninth Circuit has specifically explained the following:

> A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the *substantive law* governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

*T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (emphasis added). Cognizant of this standard and in view of the undisputed facts and applicable law, the court finds that *both* motions for partial summary judgment should be *partially* granted.

D. *Undisputed Material Facts*

The Department of Labor brought this action primarily to recover overtime compensation under the FLSA for those employees of Circle A who engaged in the "beet hauls" which took place between December 9, 1983, and April 23, 1986. The beet hauls facilitated by Circle A employees are seasonal in nature and the majority of drivers employed to perform the hauls do not work for Circle A on a year-round basis. However, Circle A does employ a few drivers on a year-round basis.

Although DOT regulated Circle A's interstate hauling activities, nothing in the record suggests that DOT ever attempted to regulate Circle A's beet haul operation.

Circle A's beet haul operations were purely intrastate. Accordingly, alone, the beet haul activity does not fall under the motor carrier exemption. At all time periods relevant to this action, Circle A was a "motor private carrier" as defined by 49 U.S.C. § 10102(16). Circle A engaged in interstate hauling during the time periods at issue and was thereby subject to regulations by the Department of Transportation. Indeed, at least with respect to some Circle A employees, at all times relevant to this action, DOT required Circle A to comply with regulations contained in 49 C.F.R. pt. 200, *et seq.*

In October 1981 and again in December 1987, the Federal Highway Administration of DOT conducted safety compliance audits of Circle A's operations. Upon completion of such audits, the Highway Administration concluded that: (1) as of October 1981, two of Circle A's drivers were subject to the Federal Motor Carrier Safety Regulations (and, therefore, under DOT jurisdiction); and (2) as of December 1987, four of Circle A's drivers were subject to the Federal Motor Carrier Safety Regulations (and, therefore, under DOT jurisdiction).[4]

### III. ANALYSIS

A. *The FLSA and the Motor Carrier Exemption*

In 1938, Congress enacted the Fair Labor Standards Act (FLSA) to protect workers from substandard wages. *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 739, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981). In Title 29 of the United States Code, Section 207(a)(1) sets forth the right of employees to receive overtime pay "at a rate not less than one and one-half times

the regular rate" for any hours worked in excess of 40 in any work week. 29 U.S. C.S. § 207(A)(1) (Law.Co-op.1975). Simultaneously, however, Section 213 of the FLSA specifically exempts certain employers and/or employees from Section 207 coverage.

In this case, the exemption at issue is known as the "Motor Carrier" exemption. Title 29 U.S.C. § 213(b)(1) sets forth the Motor Carrier Act exemption and provides the following:

> (b) The provision of section [207] [the FLSA wage/hour provision of this title] shall *not* apply with respect to—
>
> (1) *any employee* with respect to whom the Secretary of Transportation *has power* to establish qualifications and maximum hours of service pursuant to the provisions of section [304] of [Title 49]. . . .

29 U.S.C.S. § 213(b)(1) (Law.Co-op.1975) (emphasis added). Thus, § 213(b) "exempts from the overtime compensation provisions those *employees* who are subject to the jurisdiction of the Secretary of Transportation [pursuant to 49 U.S.C. § 304]."[5] *Jones v. Giles,* 741 F.2d 245, 249 (9th Cir. 1984) (emphasis added). In 1983, Section 304 of the Motor Carrier Act (MCA) was repealed and re-enacted without substantive change as Section 3102 of Title 49.[6]

In pertinent part, Section 3102(b) provides that, "[t]he Secretary of Transportation may prescribe requirements for . . . qualifications and maximum hours of service of employees of . . . a motor private carrier, when needed to promote safety of operation." 49 U.S.C.S. § 3102(b)(1) and (2) (Law.Co-op.1981 & Supp.1989). The term

---

**4.** The record also reflects that in March 1985, the Federal Highway Administration conducted a safety compliance audit of Hall Transportation, Inc., a transportation company which was affiliated with Circle A and which operated out of the same facility in Twin Falls, Idaho. The Administration found that only one of Hall's drivers was subject to the Department of Transportation's jurisdiction.

**5.** The Department of Transportation was formerly known as the Interstate Commerce Commission (ICC). *See* Department of Transporta-

tion Act, 49 U.S.C. § 1655(e)(6)(B) (repealed 1983) under section four of the Motor Carriers Act (MCA), 49 U.S.C. § 304(a)(1) (repealed 1978, and revised, 49 U.S.C. § 3102(b) (1983).

**6.** The repeal and reenactment were effectuated in the same piece of legislation. *See* Pub.L. No. 97–449, § 7(b), 96 Stat. 2444 (1983). Because the reenactment was done without substantive change to Section 304, courts have adopted interpretations of Section 304 as precedent in construing Section 3102.

"motor private carrier" as used in Section 3102 is defined as:

[A] person, other than a motor carrier, transporting property by motor vehicle, when—

(A) the transportation is as provided in section 10521(a)(1) and (2) of this title [i.e., in interstate commerce];

(B) the person is the owner, lessee, or bailee of the property being transported; and

(C) the property is being transported for sale, lease, rent, or bailment, or to further a commercial enterprise.

49 U.S.C.S. § 10102(16) (Law.Co-op.1979 & Supp.1989).

**B.** *Preclusion of Concurrent Jurisdiction: Does It Apply to Employers and/or Employees?*

It is clear, as all courts agree, that "[n]o concurrent jurisdiction exists between section seven of the FLSA and [Section 3102 (formerly Section 304) of the Motor Carrier Act]." *Jones v. Giles*, 741 F.2d at 249 (*citing Levinson v. Spector Motor Serv.*, 330 U.S. 649, 661, 67 S.Ct. 931, 938, 91 L.Ed. 1158 (1947)). However, what is not quite so clear, is the issue regarding whether the preclusion of concurrent jurisdiction applies to employers as a whole *or to their* individual employees. A resolution of this issue gives rise to this court's ruling on the cross-motions currently before it.

1. *DOT's regulation of Circle A.*

Circle A, as a private carrier, attempts to exempt all of its drivers and mechanics from the overtime provisions of the FLSA under the Motor Carrier Act. In so doing, Circle A emphasizes the following:

[I]t is not necessary for the Secretary of Transportation to have actually established qualifications and maximum hours of service for the 13(b)(1) exemption to apply, but ... the mere existence of [her] power to do so is sufficient.

*Martinez v. Phillips Petroleum Co.*, 283 F.Supp. 514, 530 (D.Idaho 1968), *aff'd* 424 F.2d 547 (9th Cir.1970) (*citing Levinson v. Spector Motor Service*, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947)). However, reliance on this passage begs the question:

"Did the Secretary have the power to establish qualifications and maximum hours of service for *all* of Circle A's drivers and mechanics between December 1983 and April 1986?"

True, the Federal Highway Administration, a subagency of DOT, conducted safety audits of Circle A's operations in October 1981, and again in December 1987. The 1981 audit revealed that Circle A had at least two drivers who were subject to the Federal Motor Carrier Safety Regulations and, therefore, under the jurisdiction of DOT. The 1987 investigation disclosed that at least four of Circle A's drivers were subject to Federal Motor Carrier Safety Regulations and, therefore, under the jurisdiction of DOT. *See* Affidavit of Frank York, filed July 7, 1989, at 2.

Circle A argues that because DOT undertook these compliance reviews, all of Circle A's drivers and mechanics fall within DOT's regulatory ambit and, therefore, are excluded from the FLSA's coverage pursuant to the motor carrier exemption.

The Secretary of Labor, on the other hand, maintains that since the Federal Highway Administration only determined that a very limited number of Circle A's employees were under DOT's jurisdiction, the remainder of Circle A's drivers and mechanics are covered by the FLSA. The Secretary's argument is based on the fact that in the Federal Highway Administration/DOT's 1981 inspection, only two of defendant's drivers were found to be subject to the Federal Motor Carrier Safety Regulations (FMCSR). And, in 1987, at a time when Circle A was seeking ICC authority as a motor carrier and was doing more interstate hauling than it previously had, the Federal Highway Administration/(DOT) determined that only four of Circle A's employees were subject to DOT's jurisdiction.

Circle A attempts to controvert these findings by arguing that DOT reports only account for drivers in violation of the motor carrier safety regulations, and not for all Circle A drivers who fall within the jurisdiction of DOT. However, a close reading of the documentation submitted by

the Secretary clearly demonstrates that those audits revealed the number of drivers *subject* to the FMCSR's and thereby subject to the jurisdiction of DOT. *See* Affidavit of Frank York, filed July 7, 1989 and attached exhibits; Affidavit of John Francis, attached to Materials Submitted in Support of Secretary's Cross Motion for Partial Summary Judgment, filed Dec. 27, 1989.

While the Secretary concedes that a few of Circle A's employees are not covered by the FLSA, and that, to an extent, Circle A is entitled to the benefits of the motor carrier exemption, the Secretary argues that the majority of Circle A's drivers drove *intrastate* and were, therefore, within the coverage provisions of the FLSA and beyond the scope of the Motor Carrier Exemption. The Secretary moves this court to accept DOT's findings in regard to the number and identity of Circle A's interstate drivers and to limit the motor carrier exemption to those individuals. The Secretary argues that the court should accord great deference to DOT's special expertise in enforcing the Motor Carrier Act, 49 U.S.C. § 3102, *et seq.*, and its implementing regulations. *Whirlpool Corp. v. Marshall*, 445 U.S. 1, 11, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980).

*2. The impact of Morris v. McComb on the issue of concurrent jurisdiction.*

Both parties cite the seminal case of *Morris v. McComb,* 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947), in support of their respective positions. The court has carefully read, and reread, that decision and has determined that *Morris* supports granting plaintiff's *and* defendants' motions in part, and denying them in part. In *Morris,* although the employer therein did not equally distribute interstate trips to each driver, the Supreme Court emphasized that:

[A]pparently in the normal operation of the business, these strictly interstate commerce trips were distributed generally throughout the year and their performance was *shared indiscriminately* by the drivers and was mingled with the performance of other like driving services rendered by them otherwise than in

interstate commerce. These trips were thus a *natural, integral* and *apparently inseparable* part of the common carrier service of the petitioner and of his drivers.

*Id.* at 433, 68 S.Ct. at 136 (emphasis added). Based on such facts, the Supreme Court held that the Interstate Commerce Commission (now the Department of Transportation):

[had] the *power* to establish qualifications and maximum hours of service, pursuant to the provisions of § 204 of the Motor Carrier Act, for the *entire classification* of petitioner's drivers and "mechanics" and it is the existence of that power (rather than the precise terms of the requirements actually established by the Commission in the exercise of that power) that Congress has made the test as to whether or not § 7 of the Fair Labor Standards Act is applicable to these employees.

*Id.* at 434, 68 S.Ct. at 137 (footnote omitted) (emphasis added). Later in that decision, the Supreme Court specifically stated that:

Having determined that the Commission has the power to establish qualifications and maximum hours of service for *these drivers and "mechanics"* under § 204 of the Motor Carrier Act, the question recurs as to whether, in the face of the exemption stated in § 13(b)(1) of the Fair Labor Standards Act, the requirements of § 7 of that Act nevertheless apply to these *employees.* This issue as to the possible reconciliation of the language of these Acts so as to provide for concurrent jurisdiction was considered at length in the Levison case and the conclusion was there reached that such a construction was not permissible.

*Id.* at 437–38, 68 S.Ct. at 138 (emphasis added). Thus, while concurrent jurisdiction is clearly not permissible over an individual employee, read in its entirety, the *Morris* decision certainly does not stand for the proposition that, if DOT regulates *any* employees in certain job classifications, then *all* employees in the same classification are automatically exempt from the provisions of the FLSA. Indeed, while Circle A re-

quests this court to construe *Morris* to say just that, this court finds that the Supreme Court, and the Ninth Circuit Court of Appeals treat Section 213(b) as an "employee" based exemption.

In *Morris,* the Supreme Court specifically recognized that an individual employee could be under the jurisdiction of the Department of Labor one week, and under the jurisdiction of the Department of Transportation the next. The Court clearly implied, and subsequent decisions are consistent with such a position, that an employer may have some employees subject to the Motor Carrier Act and others subject to the Fair Labor Standards Act, as it stated:

> If ... a driver does not drive or operate a truck in the transportation of property in interstate or foreign commerce for an entire week, he is not subject to the regulations *herein prescribed* during that week. *We express no opinion as to whether or not during that week the driver is subject to the provisions of section 7 of the Fair Labor Standards Act.*

*Morris v. McComb,* 332 U.S. at 434 n. 13, 68 S.Ct. at 137 n. 13 (emphasis in original). *Accord Goldberg v. Faber Indus., Inc.,* 291 F.2d 232 (7th Cir.1961); *Crooker v. Sexton Motors, Inc.,* 469 F.2d 206 (1st Cir.1972).

3. *The Import of Brennan v. Schwerman Trucking Co. and Marshall v. Aksland.*

In support of its own motion and in opposition to the Secretary's motion, Circle A relies heavily on the cases of *Brennan v. Schwerman Trucking Co.,* 540 F.2d 1200 (4th Cir.1976), and *Marshall v. Aksland,* 631 F.2d 600 (9th Cir.1980), to suggest that the motor carrier exemption is "employer (i.e., carrier) based" rather than "employee based," and that, as an employer, Circle A should not be under the simultaneous jurisdiction of both the Department of Labor and the Department of Transportation. First of all, those cases, as well as *Morris v. McComb,* are distinguishable from Circle A's situation because they do not deal with private carriers. Secondly, to the extent Circle A relies on those cases to support its position that an employer cannot simultaneously have some employees subject to

the FLSA and other employees exempt under the Motor Carrier Act, those decisions actually cut against Circle A's position. In fact, those decisions are consistent with the analysis set forth above and with DOT's interpretation of 49 U.S.C. § 304, *infra* at 1321.

In *Brennan,* the Fourth Circuit Court of Appeals specifically acknowledged that as long as work was assigned on an *"indiscriminate* basis," *all* of Schwerman's drivers and mechanics were exempt from the overtime pay provisions under 29 U.S.C. § 213(b)(1). *Brennan v. Schwerman Trucking Co.,* 540 F.2d at 1205 (emphasis added). And, in *Marshall v. Aksland,* the Ninth Circuit Court of Appeals specifically noted that the drivers involved "conformed to the Motor Carrier Safety Regulations, maintained Department of Transportation forms, and *shared interstate hauls on a rotating basis." Marshall v. Aksland,* 631 F.2d at 602 (emphasis added).

C. *Exemptions to the FLSA Narrowly Construed and Burden on Employers to Establish Right to Exemption*

Notwithstanding their existence, to ensure employee's maximum coverage under the FLSA, exemptions under Section 213 are construed *narrowly* against the employer asserting their applicability, and the employer carries the burden of proving that an exemption applies. *See, e.g., Idaho Sheet Metal Works, Inc. v. Wirtz,* 383 U.S. 190, 206, 86 S.Ct. 737, 747, 15 L.Ed.2d 694 (1966); *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Jones v. Giles,* 741 F.2d 245, 250 (9th Cir.1984); *Donovan v. Nekton, Inc.,* 703 F.2d 1148, 1151 (9th Cir.1983).

In *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945), the United States Supreme Court specifically recognized that:

> Any exemption from [the FLSA] must therefore be *narrowly construed,* giving due regard to the plain meaning of statutory language and the intent of Congress. To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the

interpretative process and to frustrate the announced will of the people. *Id.* at 493, 65 S.Ct. at 808 (emphasis added). Following this position taken by the Supreme Court, in addition to having acknowledged that exemptions from the FLSA must be narrowly construed to ensure maximum coverage by such "remedial legislation," the Ninth Circuit Court of Appeals has more recently recognized that, "[e]mployers who claim an exemption applies to their employees must show that the employees *fit plainly* and *unmistakably* within its terms." *Worthington v. Icicle Seafoods, Inc.*, 774 F.2d 349, 352 (9th Cir. 1984) (*citing A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945)) (emphasis added).

The Secretary maintains that only those drivers expressly subject to DOT regulation should be excluded under motor carrier exemption and that the balance of Circle A's employees should be entitled to overtime under Section 7 of the FLSA.

1. *Circle A's attempt to meet its burden.*

The court is mindful of the Supplemental Affidavit submitted by Larry Aslett, as Secretary of Circle A, which indicates, inter alia, that: (1) "each driver hired is potentially an interstate driver; each could be called upon to transport shipments in interstate commerce," (2) "each driver hired by Circle A must satisfy the United States Department of Transportation's specifications ..." and (3) that "[i]t is Circle A's policy and practice to indiscriminately, i.e., randomly, assign drivers to interstate tasks as they accrue during a given calendar year, even if a given driver had primarily worked on the beet haul." Supplemental Affidavit of Larry Aslett, filed April 20, 1989, at 2.

However, despite these representations and merely because DOT conducted safety audits of Circle A in 1981 and 1987, the court is not satisfied that Circle A has met its burden of presenting sufficient undisputed facts which establish that between December 9, 1983, and April 23, 1986, *all* of Circle A's drivers and mechanics were *subject* to the jurisdiction of the Department of Transportation, whether exercised or not, and thereby exempt from the overtime provisions of the FLSA.

Indeed, while Mr. Aslett's affidavit maintains that interstate drivers are determined on an "indiscriminate basis," such affidavit is written in the *present* tense and sets forth no basis for this court to find that such policy was in effect during the relevant time periods between 1983 and 1986. Moreover, statements from Circle A employees controvert such representations. *See, e.g.*, Affidavit of Robert E. Giddings, filed June 2, 1989; Affidavit of Cecil E. Napier, filed June 7, 1989; Affidavit of Gary W. Hill, filed June 12, 1989; Affidavit of Lance A. Leckenby, filed June 12, 1989; Affidavit of Dale I. Dalley, filed July 3, 1989.

This court is concerned with the difficulty that businesses face in keeping up with the numerous regulations, etc., promulgated by state and/or federal agencies. However, in this case, a "technical regulation" is not at issue. Instead, Circle A attempts to establish the applicability of the Motor Carrier Act exemption to avoid payment of overtime under the *Fair Labor Standards Act*—a monumental piece of remedial legislation passed by Congress in 1938. In *Menlo Serv. Corp. v. United States*, 765 F.2d 805, 809 (9th Cir.1985), the Ninth Circuit specifically noted "the well-settled rule that while terms of remedial labor legislation are to be liberally construed, exemptions in such statutes should be read narrowly." *Id.* at 809–10 (*citing Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir.1983); *Brennan v. Keyser*, 507 F.2d 472, 477 (9th Cir.1974), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975).

Moreover, in *Donovan*, the Ninth Circuit Court of Appeals considered the applicability of an exemption under Section 213, as it reviewed a finding by a district court which concluded that certain employees were not exempt from the overtime provisions of the FLSA. As it affirmed the district court's decision, the court of appeals observed that exemptions to the FLSA are narrowly construed and acknowledged that:

[The employer] may be correct that exempting some employees and not others who sometimes perform identical work at the same time ... may create significant problems. But those are problems which should be addressed to Congress and the agencies charged with the administration of the applicable laws and *not to the Courts.*

*Donovan v. Nekton, Inc.,* 703 F.2d at 1151 (emphasis added). The terms of the FLSA have received widespread recognition since 1938. Therefore, as an employer, Circle A should have been aware of the overtime provisions of the FLSA and that at least *some* of its employees (i.e., those who were not making interstate hauls on an indiscriminate basis) were entitled to overtime compensation after working 40 hours in any given week.

**2.** *Public policy requires Circle A to meet its burden.*

In this case, Circle A, as a private motor carrier, effectively seeks application of the motor carrier exemption to all drivers and mechanics employed between December 9, 1983, and April 23, 1986. As discussed previously, in cases such as this, courts, taking their cue from *Morris v. McComb,* have focused on the proportion of interstate-to-intrastate employee activity, the method by which the carrier assigns interstate activity to the pertinent class of employees, and the overall business of the carrier.

Upon careful consideration of the record as a whole, this court finds that to grant Circle A's motion would be to effectively grant a blanket exemption as to all Circle A drivers and mechanics employed during the relevant time periods. Were Circle A correct in its position, any carrier could rid itself of the obligation to pay overtime compensation by the simple act of parcelling out a minimal number of interstate trips among its employees.

Clearly, the purposes of the Motor Carrier Act and the Fair Labor Standards Act cannot be ignored. Each Act seeks to protect different public interests. However, this court need not engage in weighing the value of protecting employee and motor vehicle safety against the value of assuring employees a fair wage for hours worked. Indeed, this court has been directed and has a duty to construe FLSA exemptions narrowly in order to extend the remedial benefits of the Act to the greatest number of persons. Under the undisputed circumstances in this case, to withhold the benefit of the FLSA from all of Circle A's drivers and mechanics would be inconsistent with the legal standards this court must observe.

In *Morris,* the Court noted the facts supported a finding that interstate routes were assigned *indiscriminately* among *all* the drivers, so that *all* of the carrier's drivers were eligible to receive an interstate route at some point throughout the year. *Morris v. McComb,* 332 U.S. at 433, 68 S.Ct. at 136. With respect to Circle A, however, this court is neither satisfied that interstate drivers were determined from a pool or on a rotating basis, nor that all Circle A drivers had a *reasonable* expectation of driving in interstate commerce. The record clearly does not support a finding that Circle A indiscriminately assigned interstate routes among all drivers between December 9, 1983, and April 23, 1986. Therefore, based on the established facts and as a matter of law, this court must refrain from applying the motor carrier exemption so as to exempt all Circle A drivers and mechanics from the overtime provisions of the FLSA.

**D.** *DOT's Role in the Resolution of the Cross–Motions*

**1.** *DOT's interpretation of the "motor carrier" exemption.*

It is well settled that the judiciary is to accord *"great deference* to the interpretation given [a] statute by the officers or agency charged with its administration." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (emphasis added). And with relevance to the case at bar, the Ninth Circuit has acknowledged that, as the agency primarily responsible for implementing the Motor Carrier Act, DOT's interpretation of the Motor Carrier

Act is entitled to considerable deference. *Jones v. Giles*, 741 F.2d at 249.

In 1981, DOT issued an official interpretation of the Federal Highway Administration's jurisdiction to regulate drivers engaged in interstate and foreign commerce. Federal Highway Administration (FHWA), DOT Notice of Interpretation, 46 Fed.Reg. 87,902 (1981) (to be codified at 49 C.F.R. pt. 390). In its Interpretation of 49 U.S.C. § 304, DOT addressed relevant case law, including *Morris v. McComb*, and concluded that DOT will have jurisdiction over an individual driver *if:*

> [The driver is] called on, or is subject to being called on, to drive in interstate commerce as part of the driver's *regular* employment ... [or] even if the driver has not personally driven in interstate commerce if, because of company policy and activity, the driver could *reasonably* be expected to do interstate driving.

*Id.* at 87,903 (emphasis added). Moreover, the interpretation provides that, "[i]f the carrier does interstate work or advertises for such work and assigns drivers *randomly* to that driving, *all* the drivers are under the jurisdiction of 49 U.S.C. 304." *Id.* (emphasis added). However, "[j]urisdiction does *not* attach if there is *no possibility* of the individual driver doing interstate driving *or* if the *possibility* of interstate driving is *remote*." *Id.* (emphasis added).

As the case law bears out, a driver is not exempt under the Motor Carrier Act merely because he takes one or two interstate trips. *See, e.g., Crooker v. Sexton Motors, Inc.*, 469 F.2d 206, 211 (1st Cir.1972) (court remanded case for determination regarding weeks in which an employee performed no interstate driving; and, as to those weeks the transportation exemption did not apply and overtime compensation was due). In fact, as stated earlier, at the time *Morris v. McComb* was handed down, DOT (then the ICC) used a week-by-week analysis of driver's activities to determine whether the ICC

had jurisdiction. Thus, the Supreme Court indicated that a driver's status may change from week to week. Because the week-by-week determination placed too much burden on employers as well as the agencies with fluctuating jurisdiction, later, as delineated in DOT's 1981 interpretation, a "4-month rule" was put into place.[7]

The mere existence of the one-week and/or four-month rules compels the conclusion that, while DOT may have jurisdiction over any given driver at any given time, merely having jurisdiction over one driver or several drivers does not render all drivers of any given employer subject to the jurisdiction of DOT and, correspondingly, foreclosed from the benefits of the FLSA.

Thus, in light of DOT's interpretation, where, as here, Circle A claims that DOT has jurisdiction over all of its drivers, including those who have not driven in interstate commerce, Circle A must present evidence that, *during the relevant time period* (i.e., December 9, 1983, through April 23, 1986): (1) Circle A engaged in interstate commerce; *and* (2) that all of its drivers *could reasonably have been expected to make interstate runs.* FHWA, DOT Notice of Interpretation, 46 Fed.Reg. at 87,903. Absent such evidence, however, and construing the applicable exemption narrowly against Circle A *as the employer*, such drivers are entitled to coverage under the overtime provisions of the FLSA.

2. *DOT has jurisdiction to determine which employees fell within motor carrier exemption between December 1983 and April 1986.*

In *Marshall v. Union Pac. Motor Freight Co.*, 650 F.2d 1085 (9th Cir.1981), the Ninth Circuit Court of Appeals found that dispatchers were not exempt under the motor carrier exemption. More importantly, however, for purposes of this case, the Ninth Circuit indicated that the Secretary

---

7. According to the Notice of Interpretation, the Federal Highway Administration believes that the four-month period is reasonable because it avoids both the too strict week-by-week approach *and* the situation where a driver could be used or subject to being used once and re-

main subject to jurisdiction under 49 U.S.C. § 304 for an unlimited time. Federal Highway Administration (FHWA), Department of Transportation (DOT), Notice of Interpretation, 46 Fed.Reg. 87,902 (to be codified at 49 C.F.R. pt. 390).

of Transportation, as opposed to a court of law, is in the best position to determine which employees fall under its jurisdiction pursuant to 29 U.S.C. § 213(b), as it stated:

> Normally, whether duties *directly* affect safety of operation of interstate motor carriers and constitute a substantial part of the employees' activities is a matter for the Secretary of Transportation to determine.... Decisions regarding in which duties affect safety, and in what manner, require the Secretary's special knowledge and experience. Similarly, if the times, or the nature of job classifications, change, it is the Secretary of Transportation's function to reexamine the existing classifications. *Only after the Secretary has had the opportunity to make the requisite determination* regarding the new duties and to decide whether to establish new classifications or revise the current classifications, should the court consider whether the duties of particular employees place them within [the Secretary's] jr .isdiction under the Motor Carrier Act.

*Marshall v. Union Pac. Motor Freight Co.*, 650 F.2d at 1090 (citations omitted) (emphasis in original and added).[8] And, in *Levinson v. Spector Motor Serv.*, the Supreme Court expressly found that such "findings of fact are squarely within the jurisdiction of the [Secretary of Transportation]." *Levinson v. Spector Motor Serv.*, 330 U.S. at 669, 67 S.Ct. at 941. Based on this direction, while this court finds the Department of Transportation's safety compliance audits of October 1981 and December 1987 to be persuasive, they are non-dispositive because they do not address the particular time periods at issue in this case.

Accordingly, as directed by the precedent on this subject, this court is constrained to await an administrative determination by DOT and shall defer to such determination setting forth those individual Circle A drivers and mechanics over which it *had the power to exercise jurisdiction* between De-

cember 9, 1983, and April 23, 1986. Such determination should be made consistent with DOT's interpretation of 49 U.S.C. § 304 and should be made based on some combination to include: (1) relevant records kept by Circle A between December 1983 and April 1986; (2) employment contracts; and, if necessary, (3) statements from each driver and/or mechanic.

### E. Conclusion

█ The conclusion that, "all Circle A drivers/mechanics should *not* be foreclosed from the benefits afforded by the FLSA," cannot be reached by considering any single statement or any single case. Rather, it is the "totality of the record" before the court as well as the relevant law in this area which supports a finding that at least some of Circle A's drivers/mechanics should be entitled to overtime during the relevant periods between 1983 and 1986.

Unfortunately, there is no decision which contemplates this exact set of facts. However, not a single case stands for the proposition that once an employer has *any* employees subject to the Motor Carrier Act exemption, thereafter *all* employees of the same job classification are automatically exempt from the FLSA. Instead, in all of the related cases, what comes up time and time again are the dual-notions that: (1) exemptions to the FLSA must be "narrowly construed"; and (2) "employers have the burden" of proving entitlement to such exemptions. *See, e.g., Donovan v. Nekton*, 703 F.2d 1148 (9th Cir.1983).

If Circle A had demonstrated that between 1983 and 1986 all of its drivers were subject to the indiscriminate distribution of interstate hauls, DOT would certainly have had jurisdiction over all of those drivers. Thus, as a matter of law, Circle A would have met its burden and *all* Circle A drivers and mechanics would be foreclosed from seeking overtime under the FLSA. However, the record before this court does not support such a conclusion. And, to the

---

**8.** Moreover, in *Morris v. McComb,* the Supreme Court indicated that, "Congress ... expressly has authorized the Commission, *and not the courts,* to decide when [a] case is an appropriate

one for ... a general exemption." *Morris v. McComb,* 332 U.S. at 436–437, 68 S.Ct. at 138 (emphasis added).

extent Circle A's affidavits allege such, the Department of Labor has controverted those statements. *See, e.g.,* Affidavit of Robert E. Giddings, filed June 2, 1989; Affidavit of Cecil E. Napier, filed June 7, 1989; Affidavit of Gary W. Hill, filed June 12, 1989; Affidavit of Lance A. Leckenby, filed June 12, 1989; Affidavit of Dale I. Dalley, filed July 3, 1989.

The record simply fails to support a finding that between 1983–1986, *all* Circle A drivers were subject to making interstate hauls on an "indiscriminate/rotating basis." Instead, what the record suggests is that, to the extent that DOT had jurisdiction (whether exercised or not) over any Circle A drivers, it was the minority of drivers, rather than the majority, which were actually subject to DOT jurisdiction during the relevant time periods between 1983 and 1986. Of course, those drivers over which DOT did have jurisdiction between 1983–1986 would *not* be entitled to overtime under the FLSA.

In view of the foregoing analysis and the pending cross-motions, this order contemplates that, with respect to Circle A's operations between December 1983 and April 1986, the requisite review and factual findings must be made by DOT, rather than this court. Clearly, from *Morris v. McComb* to decisions rendered today, it is DOT, and *not* the Department of Labor *or* this court which has the expertise and is charged with making such an administrative determination. *See, e.g., Jones v. Giles,* 741 F.2d at 249. Therefore, this court finds that it shall be incumbent upon *all* parties to these proceedings to act promptly in seeking such a determination by DOT—so that this litigation, which has been pending since 1986, may be put to rest.

Thus, in summary, based on the record as a whole and the relevant legal standards, this court has determined that during the relevant time periods and upon completion of the foregoing administrative determination by DOT, those employees found *subject* to DOT's jurisdiction, whether exercised or not, shall be foreclosed by the motor carrier exemption from obtaining overtime under the FLSA. Conversely, those employees found not to be subject to DOT's jurisdiction, during the relevant time periods, shall be entitled to overtime compensation pursuant to the FLSA.

## IV. ORDER

Based on the foregoing and the court being fully advised in the premises,

IT IS HEREBY ORDERED that Circle A's Motion for Partial Summary Judgment is GRANTED in PART and DENIED in PART.

IT IS FURTHER ORDERED that the Secretary's Cross Motion for Partial Summary Judgment is GRANTED in PART and DENIED in PART.

IT IS FURTHER ORDERED that these proceedings shall be stayed pending notification to this court that, in accordance with this order and as requested by the parties herein, the Department of Transportation (DOT) has conducted and completed an administrative review for the purpose of determining those Circle A drivers and/or mechanics over which it *had* jurisdiction, whether exercised or not, between December 9, 1983, and April 23, 1986.

IT IS FURTHER ORDERED that upon the completion of such review by the Department of Transportation, *or* in the event the Department of Transportation elects not to exercise its jurisdiction under the Motor Carrier Act, the parties shall immediately seek further direction from this court for further disposition of these proceedings.